## WILLIAM SAWYER v. THE RUTLAND & BURLINGTON RAILROAD COMPANY.

### Variance.    Obligations and liabilities of railroad companies.

The declaration, after setting up the corporate existence of the defendants and of the R. & W. R. Co., and the construction and use by them of their respective railroads, averred that the defendants and the said R. & W. R. Co. *made and entered into a contract and arrangement with each other, upon terms mutually agreed upon by them*, by virtue of which the said R. & W. R. Co. run their engines and cars over a section of the defendants' road, upon which the defendants had a side track and switch, of which they had the exclusive control, and which it was their duty to keep in such a condition as not to divert the engines and cars of the R. & W. R. Co. from the main track; that they neglected this duty, and by reason thereof an engine of the R. & W. R. Co., of which the plaintiff had the charge as engineer, was diverted and thrown from the track, whereby the plaintiff was thrown from the engine and injured, &c., &c.    The testimony showed the existence of the companies and the construction and use by them of their respective railroads as alleged in the declaration, and that they *had agreed for their mutual interest and convenience* that the R. & W. R. Co. might run their engines and cars over a portion of the defendants' road; that upon this part of their road the defendants had a switch and side track which was under their exclusive management and control, and that in consequence of the said switch being misplaced through the gross negligence of the defendants' servant, a locomotive of the R. & W. R. Co., of which the plaintiff, who was an employee of that company, had charge as the engineer, was thrown from the track and the plaintiff thereby injured, &c.    *Held*, that there was no variance which would defeat the action : and that the defendants were directly liable to the plaintiff for the injury he had sustained.

The obligation, upon the breach of which the plaintiff was entitled to recover, was one not imposed or created by contract, but by law, irrespective of any contract between the parties; and the averments and proof respecting any agreement or understanding between the defendants and the R. & W. R. Co. were only material for the purpose of showing that the plaintiff was rightfully on the defendants' road at the time he was injured.

If the plaintiff's action was grounded upon the nonperformance by the defendant of a duty arising from some contract between the parties, it could not be sustained, the defendants' contract having been only with the R. & W. R. Co., and there having been no privity of the plaintiff thereto; but instead of this, the action is for the nonobservance of duties which arose, not from contract, but, from the character of the defendants' employment and from the position and public relation which they have assumed.

The duty of the defendants had reference to and concerned the safety and security of all who might be in the lawful use of the road, and was of a general and public character, and for its nonperformance any one particularly injured could sustain his action.

ACTION ON THE CASE. The declaration set up the corporate existence of the defendants, and the construction and use by them of a railroad through the town of Rutland; the corporate existence of the Rutland and Washington Railroad Company, and the construction and use by them of a railroad from a point at Mill Village, so called, in the town of Rutland, to Castleton and Poultney, and averred that "heretofore, to wit, on the first day of November, A. "D. 1851, at Rutland aforesaid, the defendants and the said Rut- "land & Washington R. Co. made and entered into a contract and "arrangement with each other, upon terms mutually agreed upon "by the said corporations, under and in virtue of which the said "corporations, afterwards, to wit, on the said first day of Novem- "ber, A. D. 1851, connected their said roads with each other at "said Mill Village, and the said Rutland & Washington Railroad "Company, thence hitherto have run their locomotive engines and "cars daily upon and over the said section of said railroad of the "defendants between the point of said connection at Mill Village, "and the depot of the defendants in said Rutland. And whereas, "the defendants, on the said first day of November, A. D. 1851, "and thence hitherto have had a 'switch,' so called, at a point on "the said section of their said road, about equi-distant between the "said point of connection above mentioned and the said depot, "diverging from the main track of the defendants' said road, and "with a lateral rail track, leading from said 'switch,' westerly to "and immediately into a gravel pit or bank of the defendants, of "which said 'switch' and lateral rail track, together with their said "main track, the defendants, during all the time aforesaid, had the "exclusive control, and were under a duty and obligation to said "Rutland & Washington Railroad Company, and the employees "and servants of said last mentioned company, while engaged in "conducting and running their said engines and cars, upon and over

" said section of the defendants' said road, to keep the same in a
" proper and fit condition therefor, and to use due and proper care
" of said ' switch,' and so to manage the same as not to divert the
" engines and cars of the said Rutland & Washington Railroad
" Company from the main track, to and upon the said lateral rail
" track of the defendants, while running over said section of the
" defendants' said railroad."

And that the plaintiff, on the 27th day of November, A. D. 1851,
was in the employment and service of the Rutland & Washington
Railroad Company, as an engineer, and as such had the conduct
and care of their engines and cars; and under said employment, it
was his duty, to run the same upon and over said section of the
defendants' road; and that, in the execution of his said duty and
employment, he started with his said engine, and was then running
and conducting the same by means of steam power, in a prudent
and careful manner, from said depot, upon said section of the
defendants' said railroad, towards said Mill Village; "and the
" defendants, or their servants and agents, not regarding their duty
" in that behalf, did not use due and proper care of the said section
" of their said railroad, or of said switch, nor so manage the same
" as to keep the said engine on the main track of said road, but
" wholly neglected so to do—and so moved and placed said switch,
" and so carelessly and negligently left the same that by reason
" thereof, the said engine when it arrived at said switch, in its
" progress from said depot to said Mill Village as aforesaid, was
" thereby, and without any negligence or fault, or want of care or
" prudence on the part of the plaintiff, or of the said Rutland &
" Washington Railroad Company, or any of their servants or agents,
" and without the power of the plaintiff to prevent it, then and
" there diverted from the main track of the defendants' said road,
" to and upon the said lateral rail track, and was impelled, with
" great and uncontrolable force, along and upon said lateral track,
" and was then and there unavoidably thrown therefrom; and the
" plaintiff was thereby, then and there, unavoidably, and with great
" violence, thrown from said engine, by means whereof the right
" thigh bone of the plaintiff then and there became and was frac-
" tured and broken, and the plaintiff was otherwise greatly bruised,
" wounded and injured," &c.

Plea, the general issue and trial by jury, March Term, 1854,—
PIERPOINT, J., presiding.

On the trial the plaintiff gave evidence tending to prove that, for some time previous to the 22d of November, 1851, the defendants were using their railroad from the Rutland depot through Mill Village in Rutland to Burlington, and the Rutland & Washington Railroad Company had constructed and were using their railroad from Mill Village to Castleton, connecting with the defendants' road at Mill Village as stated in the declaration; and that previous to that time said corporations, for their mutual interest and convenience, had agreed that the Rutland & Washington Company might run their engines and trains upon the defendants' road, from said point of connection, to and from the Rutland depot; and that, agreeably to such agreement the Rutland & Washington Company run all their trains to and from the Rutland depot upon the track of the defendants' road, there then being only one track between those points; and that the plaintiff, at the time of the injury, was in the employ of the Rutland & Washington Company as an engineer, running a locomotive between Rutland depot and Castleton:—that about midway between Rutland depot and the point of connection of the two roads, the defendants had a side track diverging from the main track into a gravel pit:—that said side track, and the switch at its connection with the main track, were under the exclusive management and control of the defendants:—that on said 22d day of November, 1851, the plaintiff, in the exercise of his duty as the employee of the Rutland & Washington Company, started, at the proper time by his time table, with a locomotive and freight train of said Rutland & Washington Company from the Rutland depot for Castleton, and in passing with ordinary care over the defendants' road between Rutland depot and Mill Village, the said locomotive and train run off from the main track of the defendants' road upon said side track, and off from the same, in consequence of the said switch not having been placed in its proper position, through the gross negligence of the defendants' servant, who was employed by the defendants to attend said switch, and see that it was properly placed for the correct passage of all trains over said road, and that the injuries to the plaintiff complained of, were inflicted in consequence of said train running off the main track, as above mentioned.

The defendants objected, that upon such showing the plaintiff was not legally entitled to recover, and the court so decided, and so instructed the jury; and a verdict was rendered for the defendants. To this decision and instruction the plaintiff excepted.

*E. Edgerton* and *S. S. Phelps* for the plaintiff.

The defendants, by the acceptance of their charter and its attendant benefits, assumed the performance of the duties incident to it, among which were the construction and maintainance of a railroad suitable for the purpose contemplated, and a prudent and careful management of it coextensive with its contemplated use; and these duties they assumed *to the public.* Laws of 1843, p. 51, § 1. Comp. Stat. 205, § 67. *Richardson et al.* v. *Vt. C. R. Co.*, 25 Vt. 474. *Quimby* v. *Vt. C. R. Co.*, 23 Vt. 387.

The duty of providing a safe road is not created by any private personal contract with the individual. It results from the law. It is general: and whoever is injured by its breach has a remedy by action, whether there be any privity of contract between the party injured and the corporation or not. *Thomas* v. *Winchester*, 2 Seld. 397. (3 Liv. Law Mag. 33.) *Phil. & Read. R. Co.* v. *Derby*, U. S. Sup. Ct., Dec. 1852. (1 Am. Law Reg. 307.) *Collett* v. *Lond. & N. W. R. Co.*, 6 Law & Eq. Rep. 305. *Longmead & wife* v. *Holliday*, 6 Law & Eq. Rep. 562. *Cumberland Val. R. Co.* v. *Hughes*, 11 Penn. 141. *M. & B. of Lyme Regis* v. *Henley*, 27 C. L. R. 366.

Privity of contract is necessary to entitle a party to redress for a negligent act only when the duty is wholly created by contract, as in *Wright* v. *Winterbottum*, 10 M. & W. 109. In such cases the duty is private and personal, and can be enforced only between the contracting parties.

*D. A. Smalley* and *E. J. Phelps* for the defendants.

Where an action of tort is founded on a contract, a variance from the contract alleged will be as fatal as in an action on the contract itself. 3 Stark. Ev. 1547–8. *Green* v. *Greenbank*, 4 C. L. R. 375. *Snell et al.* v. *Moses & Co.*, 1 Johns. 96. *Perry* v. *Aaron*, 1 Johns. 128. *Walcott* v. *Canfield*, 3 Conn. 194. *Wright* v. *Geer*, 6 Vt. 151. The contract alleged is not the one proved either in its terms or legal effect.

The cases in which a party is liable for negligence in the care or use of his own property, are of two classes. 1. When the negligence is a breach of duty to the public, or in other words, a nuisance. 2. When an obligation exists to furnish or keep property in suitable condition for use. The latter must always depend upon a contract, express or implied, which it is necessary to aver and prove. And in no instance can case be-maintained for the tort, where assumpsit by the same plaintiff would not lie upon the contract. *Green* v. *Greenbank*, 4 Eng. Com. Law Rep. 375. *Lopes* v. *De Tastet.*, 5 Eng. Com. Law Rep. 180. *Wright* v. *Geer*, 6 Vt. 151.

To the latter class this action belongs if sustainable. And the fatal objection to it is, that no contract or privity whatever existed between the defendants and the plaintiff. The road being private property, defendants were under no obligation to keep it in order unless arising out of some contract, and only to the party contracted with. Their contract in this instance was with the Rut. & Wash. R. Co. only. The remedy of the passengers and employees of that company would be against the party with whom they contracted. And if, from the character or terms of their contract, they are without remedy, then this does not give them a right against the defendants, with whom they have no privity. *Winterbottom* v. *Wright*, 10 M. & W. 109. *Tollett* v. *Shaeston*, 3 M. & W. 283.

No such contract existed between defendants and the Rutland & Washington Company as would create a liability for this accident. The use of the road and the services of defendants' servant in tending the switch were gratuitous. For the negligence of the servant, under such circumstances, the defendants are not liable Indeed the switch man was, *pro hac vice*, the servant of the R. & W. Co. and not of the defendants. Story on Bailment, 176, § 275. And in such a case, the law would seem to be that, " a master or principal is not liable to one servant or agent for injuries occasioned to him by the negligence of another servant or agent, employed in the same service or business." *Preestly* v. *Fowler*, 3 M. & W. 1. *Albio* v. *Ag. Canal Co.*, 6 Cush. 75.

The opinion of the court was delivered, at the circuit session, in September, by

ISHAM, J.   We perceive no objections to the plaintiff's recovery in this case on the ground of variance, and we think the defendants are directly liable to the plaintiff for the injury he has sustained. The gist of this action does not arise from any contract between the parties, but from the non-observance of a duty imposed by law. In such case, it is necessary to state in the declaration the facts from which the law creates the duty, the non-observance of which is the ground of complaint.   The material averments only are put in issue, and though the plaintiff may fail in the proof of many particulars as they are stated, yet if so much is proved as leaves him a good cause of action, he is entitled to recover.   *Winn* v. *White*, 2 Black. 840.   *Max* v. *Roberts*, 12 East. 89.   1 Chitty on Plea, 371.

The declaration contains the averment of those facts which were proved on the trial of the case, that the defendants were incorporated with power to construct a railroad for the transportation of persons and property, that the charter was accepted and the road made, that the defendants were in the use of the road, and that the person having charge of the switch was in their employment and under their direction and control.   It was also in proof as it is in substance averred, that under an agreement with the defendants, the Rutland & Washington Railroad Company were permitted to run their trains upon this road to and from Mill Village and the Rutland depot, and that while the plaintiff was conducting a train over the road the engine and cars were diverted from the track by the negligence of the defendants' servant placed in charge of the switch, and the injury sustained for which this action is brought. To this extent, there is no variance between the substance of the averments and the proof.   The fact that a contract of that kind was made between the railroad companies becomes material only as showing that the plaintiff was lawfully on the road at the time he was injured.   That was the object and is the substance of the averment, and all that is material or necessary to be proved.   The Comp. Stat. 204, § 66, 67, authorises such an agreement to be made, and forbids the running of any engine or other power on any railroad in this state without the consent of the corporation to which the road belongs.   If the consent or license of the defendants was given for the use of the road on that occasion, the plaintiff,

and the train in his charge, and all persons connected with it, were lawfully on the road. It is immaterial whether the contract between the different railroad companies was made with or without a consideration, or whether it could at any time have been revoked or not. The duties imposed on the defendants by the use of their road does not depend on such considerations. The contract was sufficient as a licence or consent of the defendants for the plaintiff to pass over the road on that occasion, and so long as it remained unrevoked, the plaintiff was lawfully upon the road. Under such circumstances, it was the duty of the defendants, as it is averred in the declaration, to keep their road in a safe and proper condition for use, and to exercise that care in the management of the switch that was necessary to prevent any injury arising from that source. That duty is imposed upon the defendants at common law, and it arises, not from any contract of the parties, but from the acceptance of their charter, and from the character of the services they have assumed to perform. The obligation to perform that duty is as coextensive as the lawful use of the road, and is required as a matter of public security and safety. These general principles were sustained by the supreme court of the United States, in the case of the *Philadelphia and Reading R. Co.* v. *Derby,* 1 Phil. Law Register, 397, and in the case of the *Northern Railway Co.* v. *Harrison,* 26 Eng. L. & Eq. Rep. 444.

The direct liability of the defendants to the plaintiff in this case, we think, is fully established by the authorities. If the ground of this action was the non-performance of the contract made between the railroad companies, or of some duty arising out of it, the action obviously could not be sustained. In such case, whether the action be in form *ex contractu* or *ex delicto,* the principle governing the case would generally be the same. The same averments and proof would be required, that would be if the action was brought on the contract itself. The right of action in such case would be in the Rutland & Washington Railroad Company only ; there would be no privity which would enable the plaintiff to sustain the action. It was upon that ground the cases were decided to which we were referred by the defendants. *Winterbottom* v. *Wright,* 10 M. & W. 109. *Tollett* v. *Shaeston,* 5 M. & W. 283. *Lopes* v. *De Tastet,* 1 Brod. & Bing. 538. *Green* v. *Greenbank,* 2 Marshall 485. *Wright*

v. *Geer*, 6 Vt. 151.   The principles involved in those cases, how-
ever, have no application where a person has sustained an injury
from a neglect of duty created by law, and which duty exists irre-
spective of any contract, or where the statement of a contract is
merely introductory.   A sufficient privity, in all cases of this char-
acter, exists between parties from and to whom a legal duty is
owing, and where the breach of which is the cause of the injury.
In cases of fraud a person injured can sustain an action, though he
could sustain none upon the contract out of which the fraud arose.
The cases of *Langridge* v. *Livy*, 2 M. & Wels. 518, *Gerhard* v.
*Bates*, 20 Eng. L. & Eq. R. 130, are strong illustrations of that rule.
" If a stage proprietor, who may have contracted with the master
" to carry his servant, is guilty of neglect, and the servant sustains
" personal damage, he is liable to him; for it is a misfeasance
" towards him, if after taking him as a passenger, the proprietor
" or his servant drives without due care, as it is a misfeasance
" towards every one travelling on the road."   In that case a legal
duty was owing to the servant, irrespective of the contract between
the proprietor and the master, and though he could sustain no
action on that contract, he could for the neglect of duty.   " If a
" mason contract to build a bridge or other work on a public road,
" which he constructs, but not according to the contract, and the
" defects of which are a nuisance, he may be responsible if a third
" person is injured by the defective construction, and he could not
" be saved from the consequences of his illegal act by showing he
" was guilty of a breach of contract and responsible for it."   The
person injured in that case could sustain no action upon the con-
tract for the construction of the work ; but for the breach of duty,
which was owing to every one lawfully upon the road, he could
sustain his action.   This general rule, and these illustrations of
that rule, are given by Parke, B. in *Longmead & wife* v. *Holliday*,
6 Eng. L. & Eq. R, 565.

A direct liability exists in all cases *where personal injuries* have
been sustained by the neglect of duties which are of a general
and public character, and where the observance of those duties is
required as a matter of public security and safety.   The defendants
by the acceptance of their charter have assumed the performance
of the various duties required by it.   Some of those duties are of

Sawyer v. R. & B. R. Co.

a private character, and due to particular persons, and for their non-performance they alone can complain. *Jackson* v. *R. & B. R. Co.*, and *Hurd* v. *same*, 25 Vt. 151, 116. Other duties, which involve the safety and security of those who are in the lawful use of the road, are of a general and public character, and for their non-performance *any person particularly injured* can sustain his action. *Nelson* v. *Vt. & Canada R. Co.*, 26 Vt. 717. *Mayor &c., of Lyme Regis* v. *Henley*, 1 Bing. N. C. 222. It is that relation to the public, which by the acceptance of their charter the defendants sustain, and their obligation to discharge its corresponding duties, that is the consideration for the grant of those corporate franchises to them. They have the right to construct and enjoy for private gain, but for public use, that which is termed an improved public highway. *White River Turnp. Co.* v. *Vt. Central R. Co.*, 21 Vt. 590. It is upon that ground alone, such corporations exercise the constitutional right of taking private property against the consent of the owner for corporate use. In the language of Ch. J. Shaw in the case of *Worcester* v. *The Western R. Co.*, 4 Met. 566 : " it is manifest that the establishment of that great thorough-" fare is regarded as a public work, established by public authority, " intended for public use and benefit, the use of which is secured " to the whole community, and constitutes, therefore, like a canal, " turnpike or highway, a public easement. The company have not " the general power of disposal incident to the absolute right of " property : they are obliged to use it in a particular manner, and " for the accomplishment of a well defined public object." The duty of the corporation in all such cases to keep their road and the switches on it in a safe and proper condition for use, is of that public character, and is due to every person who is lawfully upon the road,—and for any injury which is not common to all, and which affects his person or property particularly, an action lies for him. A privity exists in all such cases between the parties from and to whom the duty is owing. In the case of *Collett* v. *the London & N. Western R. Co.*, 6 Eng. Law & Eq. R. 305, this general principle was recognised. The defendants were under obligation to transport the mail. The plaintiff was lawfully in the cars in charge of the mail, as the servant of the Postmaster General, and was injured by the defendant's negligence in the management

of the train. It was insisted that, there was no privity which would enable the plaintiff to sustain the action;—but it was held that, the action was well brought. The defendants were in the use of a public franchise, and upon whom the law imposed the duty to use proper care and skill in transporting, safely, all persons who were lawfully on the road. That duty was owing to the plaintiff personally, though he was there as the servant of another, and that personal duty created a privity which enabled him to sustain his action. PATTERSON, J. observed that, " it would be extraordinary " if the Postmaster General were the person to sue for a personal " injury to one of its officers." It would be equally strange, that the plaintiff in this case is without remedy, or that a suit for his personal injury is to be brought by the Rutland & Washington Railroad Company. The same principle applies to physicians and apothecaries, who are directly liable to the party injured, although they were employed by some other person; as their duties arise from their public relation, as well as from the nature of their employment. *Pippin* v. *Sheppard*, 11 Price 400. *Gladwell* v. *Steggall*, 5 Bing. N. C. 733. *Thomas* v. *Winchester*, 2 Selden, 397.

We have no occasion in this case to examine the doctrine whether a principal is liable to one servant or agent for injuries occasioned to him by the negligence of another servant employed in the same service or business,—as we are satisfied the facts in the case do not warrant the application of that principle. There is no propriety in saying that the person having charge of the switch was at that time the servant of the Rutland & Washington Railroad Company, as the fact is otherwise expressly found in the case; neither can it be said that the train, of which the plaintiff was at that time engineer, became *pro hac vice* the train of the Rutland & Washington Railroad Company, for such was not the intention of either of the parties, and there is no propriety in placing them in a different relation to each other than that which they intended to assume. It is obvious from the whole case that, the defendants did not intend to surrender their control of the road, or over their agents and servants placed on the line; neither did the Rutland & Washington Railroad Company intend to assume the government and control of it. They were permitted to pass over the road at given times, the defendants in the mean time keeping in their own

hands the possession and control of the road, and of the servants and agents thereon, as if no such arrangement had been made. That arrangement probably did not impose on the defendants any additional duties; its effect was to render the plaintiff lawfully on the road at the time he was injured, and being lawfully there, the duties imposed on the defendants by law, to keep their road in all its parts in a safe condition for use, was due to the plaintiff, and for their neglect in that particular, we think, he can sustain this action.

The judgment of the county court is reversed, and the case remanded.