OWEN K. HARKINS, administrator, *vs.* STANDARD SUGAR REFINERY.

Suffolk.   Nov. 17, 1876. ― Mar. 17, 1877.   AMES & LORD, JJ., absent.

One, who employs master mechanics to do certain work under his agent's general direction, each to furnish the men, tools and tackle necessary for his work, is not, in the absence of negligence in their selection, liable for an injury resulting to a servant employed by one master mechanic through the negligence of another in furnishing imperfect tackle, or in the manner of using it.

TORT for a personal injury to the plaintiff's intestate.   Trial in this court, before *Lord*, J., who reported the case for the consideration of the full court, in substance as follows :

It appeared that the defendant was the owner and occupant of premises used as its sugar refinery, and, at the time of the alleged injury, was adding an L to its main building.

Gustavus A. Jasper, called by the plaintiff, testified, that he was in the employ of the defendant, as superintendent of its business; that he drew the plans for the L and gave orders how to construct it; that he engaged the men who worked on the building, and the defendant paid them; that all the men who were employed on the work were employed by the day; that he paid the riggers, employed in raising the beams, four and five dollars a day, and a separate amount for their tools and rigging; that he paid one dollar a day to the master rigger for superintending; and that he gave the orders to the masons, riggers and other men, hurrying them up and telling them what to do. On cross-examination he testified, that he contracted orally with a master mason, to do the entire brickwork and furnish the necessary tools, and for that agreed to pay him a certain price per day for his men and for the use of his tools, and that he employed none of the men who worked under the mason, but that they were all hired by the latter; that he contracted in the same way with a carpenter to do the carpenter work, an iron founder to furnish the castings, machine shops to furnish the trusses, and riggers to do all the hoisting and furnish all the rigging; that he selected none of the tools or any part of the rigging, and employed none of the men who were at work for the riggers; that the bargain with the riggers was that they should raise six trusses into place; that he gave no directions about hoisting these trusses; that he left entirely to the riggers the plan by which the falls upon the building were rigged; and that he was not familiar with the business of hoisting.

There was evidence tending to show that the plaintiff's intestate was one of the masons employed under the master mason; that, while he was at work upon the wall in his place among other masons, who were posted along the wall at intervals of a few feet from each other, a beam which was being raised by the riggers fell and struck him, causing severe injuries, from which he died twenty days after. The immediate cause of the falling of the beam was the breaking of the tackle, which the plaintiff contended was insufficient. The evidence tended to show, that

the truss did not fall perpendicularly but diagonally, being held by a rope attached to a mast; that if it had fallen perpendicularly, it would not have fallen upon the plaintiff's intestate, but seven or eight feet from him ; that the plaintiff's intestate at the time was looking down and in the act of laying bricks, and could not see the beam which had passed over and beyond the place at which he was at work ; and that he had been at work at this place about ten minutes, and the beam had passed over the place before he went there.

The report then stated the evidence at length on the question of the sufficiency of the rope, which is not material to the point decided.

At the close of the plaintiff's evidence, the judge ordered a verdict for the defendant. If there was any evidence to warrant a verdict for the plaintiff, a new trial was to be ordered; otherwise, judgment was to be entered on the verdict.

*G. O. Shattuck & J. A. Maxwell*, for the plaintiff. 1. On the question whether the riggers were the servants of the defendant, the jury were at liberty to consider the fact that the testimony on which the plaintiff had to rely was that of a servant of the defendant, and, if there was any ambiguity or contradiction in his statement, to interpret it most favorably for the plaintiff. The work was going on on the defendant's land. The witness employed the master rigger to superintend that part of the work (just as the witness superintended the whole) ; he paid him a dollar a day for this, in addition to the daily pay, which he received, in common with the rest, from the defendant, as a workman. All the riggers received orders from the defendant, although, of course, they were under the more immediate eye of the person specially skilled in that business. The defendant paid for the use of the rigging and tools. These statements, which the jury might well have believed to set forth the true relation between the parties, bring the case within *Stone* v. *Codman*, 15 Pick. 297 ; *Johnson* v. *Boston*, 118 Mass. 114, 117 ; *Hilliard* v. *Richardson*, 3 Gray, 349, 351 ; *Wiggett* v. *Fox*, 11 Exch. 832 ; and *Rourke* v. *White Moss Colliery Co.* 1 C. P. D 556. When the witness on cross-examination said he did not employ the riggers, he did not mean to testify to the conclusion of law that they were not the defendant's servants, but simply

that he did not select the men in the first instance, as shown by his alternative expression that the master rigger "hired" them. But the defendant paid them, could have discharged them any day, and exercised the right to direct them. And how much he actually interfered is immaterial.

2. The defendant was having this building erected upon which the plaintiff's intestate was employed, and the undertaking between the parties was on the one side that the deceased should assume the ordinary manifest risks of his employment, and on the other that reasonable care should be taken not to subject him to a secret and extraordinary risk by reason of defective machinery. The liability of the defendant in any case is not based on the relation of master and servant between him and the person who furnishes or has charge of the machinery. On the contrary, it subsists in spite of it, notwithstanding the general rule that a master is not liable to a servant for the negligence of a fellow servant. This is because he has positively undertaken that reasonable care shall be used to make the machinery in his structure, or upon the premises, to which he invites the servants, safe and adequate, and he is personally obliged to see that it is so. He cannot get rid of this liability by intrusting the duty to another servant, and the servant cannot be deprived of his apparent security by secret bargains. *Snow* v. *Housatonic Railroad,* 8 Allen, 441, 445, 446. *Huddleston* v. *Lowell Machine Shop,* 106 Mass. 282. *Arkerson* v. *Dennison,* 117 Mass. 407. *Summersell* v. *Fish,* 117 Mass. 312. *Ford* v. *Fitchburg Railroad,* 110 Mass. 240, 260.

*R. M. Morse, Jr.,* for the defendant.

ENDICOTT, J. To maintain this action, the plaintiff must prove some negligence on the part of the defendant, from which negligence injury resulted to his intestate.

The alleged injury was caused by the breaking of a rope fur·nished by the master rigger. The rope broke while hoisting a beam, either by reason of its own imperfection, or the unskilfulness with which it was used by the rigger. The rigger was either the servant of the defendant, or a contractor having exclusive control of the work he had contracted to do. If he was a contractor, the defendant would not be liable for any injury caused by his negligence, whether arising from the selection of

his tackle, or the manner of using it. *Conners* v. *Hennessey*, 112 Mass. 96, and cases cited. If not a contractor, but a servant, then he and those employed under him to do the hoisting were fellow servants with the master mason and the men employed as masons under him, of whom the plaintiff's intestate was one. They together with the carpenters were engaged in the common employment of erecting and completing the structure, under the general direction of the defendant's agent. See *Johnson* v. *Boston*, 118 Mass. 114. All the master mechanics thus employed were to furnish the men, tools and tackle necessary to do the work in their respective departments. A master thus· employing servants to do a certain work, and to furnish the tools and other appliances necessary for the prosecution of the work, is responsible, to a fellow servant, only for care in the selection of the men thus employed. He is not responsible for a defective axe, rope or trowel so furnished, which in the hands and under the control of one of his servants injures a fellow servant, any more than he is responsible to his servant for the careless and negligent manner in which such tool or appliance is used by a fellow servant. Suppose a carpenter and plumber are engaged in the common employment of making repairs, each bringing, as is usual in such cases, his own tools, the master would not be liable for an injury to the carpenter, caused by a defect in the furnace of the plumber. Two woodmen are employed to cut down trees and they both bring their own axes ; it could not be contended, if one is injured by a defect in the axe of the other, that the master would be responsible. The workman takes the risks of the employment he engages in, which include the results of negligence on the part of others engaged in the same service; and, where all furnish their own tools and are engaged in a common employment, the workman takes the risk of the negligence of his fellow workman in selecting and caring for his tools, as well as in the use of them.

Such a case differs from the case where the employer, in prosecuting a particular business, as in operating a railroad, is bound to have suitable machinery and to adopt proper means for carrying it on. If there is a defect in a locomotive engine, caused by the negligence of the servants of the company, charged with the duty of keeping it in repair, the company cannot defend against

an action brought by another servant, who while engaged in running the engine was injured by such defect, on the ground that the negligence causing the injury was the negligence of a fellow servant. The duty of furnishing and maintaining a locomotive engine is the duty of the company, which it cannot avoid by delegating it to servants. *Ford* v. *Fitchburg Railroad*, 110 Mass. 240, 260.

This case is also clearly to be distinguished from other cases cited by the plaintiff, where the employer himself furnished the appliances, or was in some way directly connected with or instrumental in their construction or use. *Summersell* v. *Fish*, 117 Mass. 312. *Arkerson* v. *Dennison*, 117 Mass. 407.

No evidence was offered that the defendant was negligent in the selection of any of its workmen. Nor is there any evidence that the beam was raised under the direction of its superintendent, or that the manner of raising it was pointed out by him. The general statement that the superintendent gave orders to the mason, riggers and others, telling them what to do, does not imply that he directed them in what way or manner they were to do their work.

If therefore the riggers brought an imperfect rope, the defendant was not liable for injuries resulting to the plaintiff's intestate from its breaking ; nor is the defendant liable if the riggers used the rope carelessly and improperly, and so caused it to break.

In either aspect of the case, whether the master rigger was a contractor having exclusive control of his department, or a servant acting under the general direction of the defendant, the ruling of the presiding judge in ordering a verdict was correct.

*Judgment on the verdict.*