WILLIAM W. WARD *vs.* NEW ENGLAND FIBRE COMPANY.

Franklin.   November 16, 1890. — September 22, 1891.

Present: ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Personal Injuries — Master and Servant.*

On the issue whether the plaintiff was the defendant corporation's servant, and a fellow servant of its employees, by whose negligence he was injured, there was evidence that he was working by the month for a firm engaged in putting a machine into the defendant's mill; that the defendant's agent had prepared the specifications for the machine and "sent the order" to the firm "to do the job," but gave no further directions to the firm in regard to the work; and that, when nearly completed in the firm's shop, the machine was carried to the mill to be set up, the supporting woodwork being prepared by the defendant's employees on the same day.   A member of the firm testified, "There was no contract as to making" the machine; "we were to charge them for stock and time." *Held,* that there was evidence upon which the jury might properly find that the plaintiff was not a servant of the defendant.

TORT, for personal injuries occasioned to the plaintiff in the defendant's mill, from the alleged negligence of its employees. Trial in the Superior Court, before *Sherman,* J., who refused to rule that, upon the evidence, the plaintiff could not recover, and, after a verdict for the plaintiff, allowed exceptions, which, so far as material to the point decided, appear in the opinion.

*J. A. Aiken,* for the defendant.

*W. G. Bassett,* for the plaintiff.

KNOWLTON, J.   The only question in this case is whether, upon the undisputed facts, the plaintiff was a servant of the defendant, and a fellow servant of the employees of the defendant, by whose negligence he was injured.   He was working by the month for Manchester and Ward, who were engaged in putting a hopper into the defendant's pulp mill.   The specifications for the hopper were made by one Strahan, the defendant's superintendent, and the materials were furnished by Manchester and Ward, and the work was done by their employees.   They were to charge for the materials and the time of their men.   At the time of the accident, the plaintiff was in the defendant's mill, at work upon the hopper.   The defendant corporation contends

that, although he was in the general service of Manchester and Ward and received his pay from them, he consented that they should set him to do the defendant's work, to be paid for by the defendant according to the time spent upon it, and to be done according to specifications prepared by the defendant's superintendent, and to be managed and directed by the defendant during its progress. If this were so, he would be the defendant's servant in the particular business, notwithstanding that in a general sense he was a servant of Manchester and Ward. *Wood* v. *Cobb,* 13 Allen, 58. *Kimball* v. *Cushman,* 103 Mass. 194. *Johnson* v. *Boston,* 118 Mass. 114. *Harkins* v. *Standard Sugar Refinery,* 122 Mass. 400. On the other hand, if the defendant arranged with Manchester and Ward that they should make and set up a hopper in the defendant's mill according to certain specifications, and should charge a reasonable price for the materials furnished and the time spent in doing it, Manchester and Ward, after having entered into the arrangement, would have a right to go on and complete the hopper, and to be paid for it, and to furnish and control the men engaged upon it, and to direct their work. In that case, the title to the materials used in constructing the hopper would not pass to the defendant until the hopper was completed, and put in place; and the men who did the work would be the servants of the contractors.

On the exceptions, we cannot say, as matter of law, what the nature of the arrangement was. The plaintiff testified as follows: "Word came by a man sent from the defendant's mill to do the job. Strahan sent the order. The hopper was made according to the specifications and plan which was sent." Myron P. Ward, one of the firm of Manchester and Ward, said, "There was no contract as to making hopper; we were to charge them for stock and time." There was testimony that the hopper was nearly completed at the shop of Manchester and Ward, and then carried over to the defendant's mill; and the evidence tended to show that the defendant's agents, after preparing the specifications and employing Manchester and Ward, gave no directions in regard to the work, although the woodwork, which we suppose to be for the support of the hopper, was put up by two of the defendant's employees on the day when the hopper was set up.

The specifications for the work and the plans of the mill which were put in evidence are not before us, and we have not a very clear understanding of the construction and use of the hopper. But from the statement that word came " to do the job," and that " Strahan sent the order," we think it probable that the parties expected Manchester and Ward to assume responsibility for the proper construction of the hopper according to the specifications, and to manage and control the work, and to be paid for it, not a specified price, but a fair compensation for the labor and materials required to perform their contract. The testimony that " there was no contract as to making hopper," is immediately followed by the words, " we were to charge them for stock and time," and may well mean merely that the price to be paid was not agreed, and not that there was no undertaking to fill the order. The plaintiff and Myron P. Ward both testified that at the time of the accident the plaintiff was working for Manchester and Ward. This may have been intended to mean, either merely that he was in their general service, or that he was then doing their work, and subject to their control as to the manner of doing it.

There was evidence on which the jury might find that Manchester and Ward contracted to construct the hopper, and to receive for it a price to be ascertained when it was done, and that they alone had a right to direct and control the plaintiff while he was engaged in the work. If so, it would follow that he was not the servant of the defendant, and that the defendant's requests for rulings were rightly refused.

*Exceptions overruled.*