## WILLIAM T. MORGAN *vs*. JAMES SMITH.
## SAME *vs*. JOSHUA M. SEARS.

Suffolk. May 25, 1893. — October 20, 1893.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Fellow Servant — Master and Servant — Contractor and Contractee — Action.*

Although the servants of different contractors, while engaged in working together on a building, are in a common employment, they are not fellow servants unless they have a common master.

In an action for personal injuries occasioned to the plaintiff while in the employ of A., a carpenter, by the negligence of B., a mason in the employ of the defendant, it appeared that the accident happened while the plaintiff and B. were working together in putting in a ventilator on the roof of a building which A. and the defendant were engaged in repairing, the work on the ventilator being extra work not covered by the contract for repairing the building. There was evidence that A.'s men did not know whether they were working on extra work or contract work; that they worked interchangeably on the work covered by the contract and the extra work; and there was no evidence that the plaintiff knew that the ventilator was extra work. *Held*, that the jury would have been warranted in finding that the plaintiff did not cease to be a servant of A., and that he remained under his control or that of his foreman while engaged in doing the extra work.

In an action for personal injuries occasioned to the plaintiff while in the employ of A., a carpenter, by the negligence of B., a mason in the employ of the defendant, it appeared that the accident happened while the plaintiff and B. were working together in putting in a ventilator on the roof of a building belonging to C., which A. and the defendant were engaged in repairing under contracts with C. There was evidence from the defendant himself that B. was not only employed by him, but was his sub-foreman at the time of the accident; that B. was under his exclusive control and responsible to him alone; that he had an oral contract with C., by the terms of which he was to do all the mason-work on the building, charging C. the cost price of materials and labor, charging so many hours' work for the men without stating who the men were, and a commission thereon; that there was no extra work, all the work done by him being done under the agreement mentioned above; and there was nothing to show that B. was not under his control at the time of the accident. He further testified that he took all his orders from C.'s architect, who made some changes from the original plans which were carried out by himself. *Held*, that there was evidence on which the plaintiff was entitled to go to the jury.

If A. makes an oral contract with B., by the terms of which A. is to do all the mason-work on B.'s building, charging B. the cost price of materials and labor and a commission thereon, A. is an independent contractor, and not B.'s servant; and the fact that he takes all his orders from B.'s architect, who makes some changes from the original plans which are carried out by A., does not change the relation between A. and B., or make the servants of A. the servants of B.

LATHROP, J.    There was evidence that the plaintiff, who was
a workman in the employ of Flannagan, a carpenter, was, while
in the exercise of due care on his part, injured by the negligent
act of McCarthy, a mason in the employ of Smith, the defend-
ant in the first case.    Flannagan and Smith were engaged in
repairing a building owned by Sears, the defendant in the second
case.    At the time of the accident the plaintiff and McCarthy
were working together in putting in a ventilator on the roof.
The justice who tried the case in the Superior Court ruled, at
the close of the evidence, that there was no evidence which
would warrant a finding for the plaintiff in either case, and
directed a verdict for the defendants; and the case comes be-
fore us on the plaintiff's bill of exceptions to this ruling.

We infer from the argument of the defendants' counsel that
this ruling proceeded upon the theory that the evidence showed
conclusively that, at the time of the accident, the plaintiff and
McCarthy were engaged on extra work, not covered by the con-
tracts between Sears and Flannagan and Smith, and that they
were the servants of Sears, and so fellow servants with each
other.

There is no doubt that the general servant of one person may
become the servant of another by submitting himself to the
control and direction of the other.    In such a case the servant
becomes the fellow servant of the servants of the person under
whose control he comes; and neither his general master nor his
special master is liable if he is injured by the negligence of
one of the other servants.    *Murray* v. *Currie*, L. R. 6 C. P. 24.
*Rourke* v. *White Moss Colliery Co.* 1 C. P. D. 556, affirmed in the
Court of Appeal, 2 C. P. D. 205.    *Donovan* v. *Laing, Wharton,
& Down Construction Syndicate*, [1893] 1 Q. B. 629.    *Johnson* v.
*Boston*, 118 Mass. 114.    *Harkins* v. *Standard Sugar Refinery*,
122 Mass. 400.    *Killea* v. *Faxon*, 125 Mass. 485.    *Hasty* v. *Sears*,
157 Mass. 123.

This question was carefully considered in *Johnson* v. *Lindsay*,
[1891] A. C. 371, and Lord Watson stated what we consider to
be the rule and its limitations: " I can well conceive that the
general servant of A. might, by working towards a common end
along with the servants of B. and submitting himself to the con-
trol and orders of B., become *pro hac vice* B.'s servant, in such

572 · MORGAN v. SMITH. · [159

sense as not only to disable him from recovering from B. for injuries sustained through the fault of B.'s proper servants, but to exclude the liability of A. for injury occasioned, by his fault, to B.'s own workmen. In order to produce that result the circumstances must, in my opinion, be such as to show conclusively that the servant submitted himself to the control of another person than his proper master, and either expressly or impliedly consented to accept that other person as his master, for the purposes of the common employment." This case is affirmed in *Cameron* v. *Nystrom*, [1893] A. C. 308. See also *Ward* v. *New England Fibre Co.* 154 Mass. 419 ; *Svenson* v. *Atlantic Mail Steamship Co.* 57 N. Y. 108 ; *Sawyer* v. *Rutland & Burlington Railroad*, 27 Vt. 370 ; *Zeigler* v. *Danbury & Norwalk Railroad*, 52 Conn. 543 ; *Philadelphia, Wilmington, & Baltimore Railroad* v. *State*, 58 Md. 372 ; *Phillips* v. *Chicago, Milwaukee, & St. Paul Railway*, 64 Wis. 475.

Although the servants of different contractors while engaged in working together on a building are in a common employment, they are not fellow servants unless they have a common master. In *Johnson* v. *Lindsay, ubi supra*, the plaintiff was a workman employed by Higgs and Hill, who had made a contract with the architect of the owners of a parcel of land to erect a block of buildings upon it. By the terms of the contract, Higgs and Hill were to provide a certain sum to be paid to Lindsay and Company, or any other firm approved by the architect, for fireproof flats and floors. Before the contract was made with Higgs and Hill, the architect had received an offer from the defendants for the fireproof flats and floors, and when the building was ready for the work, the architect directed the defendants to go on with it. There was no evidence that Higgs and Hill ever attempted to interfere with the defendant's work, or to assume control over their servants. In the course of the work the plaintiff was injured by the negligence of a servant of the defendants, and it was held, reversing the judgment of the Court of Appeal, 23 Q. B. D. 508, that the plaintiff was entitled to recover.

In the cases at bar, the jury would have been warranted in finding that the plaintiff did not cease to be a servant of Flannagan, and that he remained under his control or that of his foreman while engaged in doing the extra work. There was evidence

that Flannagan's men did not know whether they were working on extra work or contract work; that they worked interchangeably on the work covered by the contract and the extra work; and there was no evidence that the plaintiff knew that the ventilator, on which he was working when injured, was extra work.

The rule that one servant cannot maintain an action against a common master for an injury occasioned by a fellow servant rests upon the ground that he takes upon himself the natural and ordinary risks incident to the performance of his service. " The safety of each," in the language of Chief Justice Shaw, " depends much on the care and skill with which each other shall perform his appropriate duty, each is an observer of the conduct of the others, can give notice of any misconduct, incapacity, or neglect of duty, and leave the service if the common employer will not take such precautions, and employ such agents, as the safety of the whole party may require." *Farwell* v. *Boston & Worcester Railroad*, 4 Met. 49, 57, 59. These reasons for the rule have no application unless the servant knows that he ceases to be under the control of the master who employs him, and passes under the control of a new master.

The question remains, In whose employ was McCarthy at the time of the accident? There was evidence that McCarthy was not only employed by the defendant Smith, but was his subforeman at the time of the accident; that he was under his exclusive control and responsible to him alone; that Smith had an oral agreement with Sears, by the terms of which he was to do all the mason-work on the building, charging Sears the cost price of materials and labor, charging so many hours' work for the men without stating who the men were, and a commission thereon; that there was no extra work, all the work done by him being done under the agreement mentioned above. This evidence came from the defendant Smith himself, and there is nothing to show that McCarthy was not under Smith's control at the time of the accident. His further testimony, that he took all his orders from the architect of Sears, who made some changes from the original plans which were carried out by himself, might well be considered by the jury as meaning merely that the architect told him what was to be done, but did not exercise any control over the men while doing the work. We are of opinion, therefore, that there

was evidence on which the plaintiff was entitled to go to the jury in the first case.

Whether the plaintiff can maintain the second action depends upon the answer to be given to the question whether the relation of master and servant existed at the time of the accident between Sears and McCarthy, or whether McCarthy was merely the servant of Smith, and whether the relation between Smith and Sears was that of contractor and contractee. So far as the evidence for the plaintiff goes, it does not show that Smith was a servant of Sears, but tends to show that he was an independent contractor; and if recourse is had to the evidence for the defendant, it clearly appears that Smith was an independent contractor, unless the fact that he was not to be paid a round sum for his work makes him merely a servant of Sears. We are of opinion that the method of payment is not the test, but that the test is whether Smith was in the exercise of a distinct and independent employment, using his own means and methods for accomplishing his work, and not being under the immediate supervision and control of his employer. *Linton* v. *Smith,* 8 Gray, 147. *Harkins* v. *Standard Sugar Refinery,* 122 Mass. 400. *Hexamer* v. *Webb,* 101 N. Y. 377, 385. *Corbin* v. *American Mills,* 27 Conn. 274.

While it appears that the architect of Sears directed certain things to be done, it does not appear that he exercised any control over the contractors in their manner of doing their work, or interfered with their choice of workmen. Even if we may assume that as an architect he had the right to inspect the work and see that it was done according to the specifications, these facts would not change the relation between the owner of the building and an independent contractor, or make the servants of the latter the servants of the owner of the building. *Pack* v. *New York,* 4 Seld. 222. *Kelly* v. *Mayor, &c. of New York,* 1 Kernan, 432. *Slater* v. *Mersereau,* 64 N. Y. 138. *Johnson* v. *Lindsay, ubi supra.*

It follows that the exceptions in the first case must be sustained, and those in the second case overruled.

*So ordered.*

*J. R. Smith,* for the plaintiff.

*J. Lowell, Jr.,* for the defendants.