Gorman, J.
This is an action to recover damages for the death of Charles Baumann for the alleged negligence of James Griffith & Sons *8 Company, builders. The action was brought against Isaac Bishop, James Griffith & Sons and the Thomas T. Gaff Estate Baumann was a rigger employed by Bishop, a wrecker, of buildings in this city. Bishop was employed by Griffith & Sons, and Griffith & Sons employed by the trustees of the Gaff Estate to partly take down and rebuild the building on the north side of Fourth street, known as the Freiberg Building, which had been partly destroyed by fire. The west wall of the building had fallen in, the roof and the floors had been burnt out for a height of six stories and the front wall was left standing perpendicular and plumb, but without any lateral support. Griffith & Sons were independent contractors, the Gaff Estate having reserved no control or direction over the work to be done. Bishop was an independent contractor under Griffith & Sons in taking down part of the building, but was not to rebuild any portion of it. In taking down a part of the wall Bishop employed a derrick which was anchored to the' building adjoining the Freiberg Building and known as the Moyse Building. It was claimed that this derrick was defective in this particular, that there was a goose neck or iron strap which held one of the stiff legs to the sill of the derrick, there being two stiff legs and one mast constituting the upright portion of the derrick. In one of these stiff legs there was but one bolt, three-eighths or three-fourths of an inch in diameter, whereas it was intended, and there were places for three bolts. "While lifting a stone from the coping of the wall fronting on Fourth street this derrick collapsed .and the only bolt which was holding one of the stiff legs of the derrick was sheered off, thereby allowing the derrick and the mast and the other stiff leg to fall over into the burned building, and in so doing it struck Baumann, who was on the wall working with the derrick, throwing him into Fourth street and killing him.
The basis of the plaintiff’s claim of his right to recover for the death of the decedent is that the work was inherently dangerous and that as a consequence thereof neither the owner nor the contractor, nor a sub-contractor could be relieved from liability on account of negligence in the doing of this work.
*9 Before going to trial; upon the motion of Bishop and the Gaff Estate; the plaintiff elected to pursue Griffith & Sons and consented to the dismissal of the Gaff Estate and Bishop from the case.
Upon the trial of the case to a jury on the issues joined a verdict of $2,500 was returned in favor of the plaintiff, administrator. A new trial is asked, principally- on four grounds:
First. That the work of taking down this wall was not intrinsically or inherently dangerous, and therefore neither the Gaff Estate nor Griffith,& Sons would be liable to the plaintiff even though there was negligence in the construction of the derrick because Bishop was'an independent contractor and unless the work was inherently or intrinsically dangerous the rule of respondeat superior applies.
Second. That the evidence shows that the plaintiff’s decedent, Baumann, was guilty of contributory negligence in remaining on the wall after being ordered off by Bishop, his employer, and incidentally that he assumed the risk inasmuch as it was one of the dangers incident to the business.
Third. That the death of the decedent was not the result of the inherent or intrinsic danger of the wall or the work of taking it down, but was the result of collateral negligence.
Fourth. That the damages awarded by the jury are excessive.
It was admitted by counsel for defendant that if the wall was inherently or intrinsically dangerous or the taking down of the wall was intrinsically or inherently dangerous, then the owner of the property and Griffith & Sons could not escape liability for any negligence of Bishop in taking down the wall, even° though Bishop was an independent contractor. The court submitted to the jury the question of fact, whether or not the wall was inherently or intrinsically dangerous, and also the question of fact whether or not the taking down thereof was intrinsically or inherently dangerous. The court believes that this was the proper course to pursue in reference to this case and that the question of intrinsic danger or inherent danger of the wall, or the work, were questions of fact not to be determined by the court, but by the jury under all the evidence and the circumstances of the case.
*10 The court believes that the case of The Cincinnati & Covington Bridge Co. v. Steinbrock, 61 Ohio St., 250, must control in this case. Whatever may be the decisions in other states it would seem that our Supreme Court in the case just cited has held that a ruined wall after a fire is intrinsically and inherently dangerous, and that the liability for negligence in taldng it down can not be shifted by the owner of it onto an independent contractor or sub-contractor. It is true that there are cases in other states which appear to hold a contrary view to that expressed in the Steinbrock case, to-wit: Engel, Admr., v. Club, 137 N. Y., 100; McCaffery v. Railroad Co., 61 N. Y., 178; King v. Railroad Co., 66 N. Y., 181; Harkins, Admr., v. Sugar Refining Co., 122 Mass., 400; Schip v. Pabst Brew. Co., 64 Minn., 22; Reilly v. C. N. W. Ry Co., 122 Iowa, 525.
The court feels, in view of the decision in the Steinbrock case, that he is bound to hold that under the most favorable view to the defendants, the question .of whether or not the wall was dangerous and the taking down thereof intrinsically dangerous, were questions of fact to be submitted to the jury. Upon these questions the jury have found against the defendant and the court is not disposed to disturb the verdict on that ground.
It is urged that Baumann was guilty of contributory negligence by being on the wall after being ordered to remain off by Bishop, his employer. It was necessary for Baumann to be on the wall in the prosecution of the work assigned to him. There was evidence tending' to show that Bishop ordered all the men to get off the woll whenever a strain was to be taken by the derrick,* but there was also evidence tending to show that Christy, the foreman, ordered the men, including Baumann, to remain upon the wall and do the work which was assigned to them in manipulating the derrick. The jury under the evidence might well have found that Baumann was not guilty of contributory negligence.
It is also urged that Baumann knew the danger and that this danger was incident to the employment and that he, in contemplation of law, assumed the risk of this 'danger. The court is of the opinion that Baumann did not assume the risk of a defective derrick, especially inasmuch as it does not appear clearly from *11 the evidence that Baumann assisted in constructing this part of the derrick which was defective, the stiff leg, the goose neck and the bolt. In this connection it may not be amiss to say that the court is not in sympathy with the rule of law which holds that the employe assumes all the risks incident to his employment, and would not apply this rule, unless it was one which clearly falls within the decisions of this state. The court does not feel that the evidence in this case establishes the fact that this was one of the risks incident to Bauman’s employment which he assumed when he went to work for Bishop.
And next it is urged that the injury was the result of collateral -negligence, and did not grow out of the intrinsic or inherent danger of the wall of the work of taking it down. The court is very much impressed with this claim, and were it not for the Steinbroek case, would be disposed to set the verdict aside on the ground that the giving way of the derrick which caused the death of Baumann, was a eollaterial incident or circumstance and collateral negligence connected therewith for which neither the Gaff Estate nor the contractor would be liable. The defendant’s contention as to this feature of the case is strongly supported by the case of Schipp v. Pabst Brewing Company, 64 Minn., 22.
It appears to the court that the accident did not grow out of the'condition of the wall, but it grew out of the negligent construction of the derrick, something collateral to the wall, but in view of the language employed by the Supreme Court in the Steinbroek case, the.court does not feel now and did not feel when the motion was made to arrest the case from the jury at the close of all the testimony, that the plaintiff was not entitled to recover. Without undertaking to quote all of the language of the Supreme Court in the Steinbroek case, it will be sufficient to say that it appears to the court to bear out the contention of the plaintiff that the defendant is liable. On page 222, the Supreme Court, quoting from the language of Cockburn, Chief Justice, in Bower v. Peate, this language occurs:
“That a man who orders a work to be executed, from which, in the natural course of things, injurious consequences to his *12 neighbor must be expected to arise, * * * can not relieve himself from liability,.” etc.
And again on page 224, the court says:
“It is the danger to others incident to the performance of the work let,” etc.
And again on page 227 the court says:
“And taking them down (walls) would necessarily be attended with danger to others.”
This seems to be broad enough to include the case of an employe or servant of an independent contractor, although the court believes that if it were not for this decision he would be warranted in holding that the death of the decedent was the result of collateral negligence, for which the superior, Bishop, would alone be liable.
It is urged that $2,500 damages are excessive. This sum is certainly not a large amount for the value of a human life, if the defendant is at all liable. The jury were charged, and correctly so, that they were at liberty to fix any sum that they might desire as the value of the plaintiff’s damages by reason of the death of the intestate not to exceed $10,000, the limit fixed by the statute. They were also instructed that they could take into consideration not only the pecuniary money value that decedent was to the mother, but they could take into consideration his value to her as an advisor and comforter and other elements that have been held to be proper to be considered by the jury in fixing the amount of damages.
The court is not disposed to make a remittitur of damages, because as a rule such remittitur inures to the benefit of the defendant and militates against the plaintiff without, as a rule, resulting in terminating the cause of action. It was peculiarly the province of the jury to fix the amount, and while the court might feel that the damages were more than he would have awarded, it must be borne in mind that it is not the province of the court to fix the amount of damages, but that it is peculiarly the right of the jury to do so.
*13 In view of all that has been said, the court is of the opinion that the motion for a new trial should be overruled. If the higher court should hold that the evidence shows that the death of Baumann was the result of collateral negligence, or that the doctrine which holds the owner or the contractor liable when the work is inherently dangerous, does not extend to a liability to the servants of an independent contractor, then this case is in such shape that it can be quickly disposed of. Motion for a new trial overruled.