## NARY *v.* NEW YORK, O. & W. RY. Co.

(*Supreme Court, General Term, Fourth Department.*  February 11, 1890.)

1. NEGLIGENCE—WILD ENGINE—PROXIMATE CAUSE.
   The R. Railroad Company having the right to run its trains over defendant's track between O. and F., subject to the rules of defendant, sent out a special train, which was held at F. for orders.  An order was sent by defendant to run the special train to O., but no notice of such order was sent to the manager of the shifting engine in defendant's yard at O.; the engineer of which, on seeing the train approaching, abandoned his engine.  A collision occurred, and the shifting engine went forward with increased speed, and into an engine of the R. Company on which plaintiff's intestate was fireman.  *Held*, that a finding that the uncontrolled condition of the shifting engine was the result of defendant's negligence was warranted.

2. SAME—PROVINCE OF JURY.
   The engineer of the special train testified that he was running six to nine miles an hour, and was giving divers signals of its approach.  *Held*, that whether the engineer of the shifting engine should have heard these signals, or was too hasty in abandoning his engine, were questions for the jury.

3. SAME—FELLOW-SERVANTS.
   The fact that deceased and the engineer of the special train were fellow-servants did not affect the question of defendant's liability; the rule of non-liability for the negligence of a fellow-servant applying only when the action is brought against the common master.

4. SAME—INDEFINITE ORDERS.
   It was proper to charge that "if the order was not sufficiently definite, taken in connection with the rules which were in existence, then it was negligence on the part of the defendant."

5. SAME—EXPERT TESTIMONY.
   Defendant called as a witness an assistant superintendent of another railroad company, for the purpose of showing that his company had a similar rule to defendant's, and that that rule was "a safe, proper, and sufficient rule to work upon."  *Held*, that it was properly excluded, the case not being one for expert evidence.

Appeal from circuit court, Oswego county.

Action by Elizabeth Nary, as administratrix of John Nary, against the New York, Ontario & Western Railway Company, for negligence in causing the death of plaintiff's intestate, John Nary, at Oswego, on the 3d October, 1887.  At and prior to that date the Rome, Watertown & Ogdensburg Railroad Company was operating a branch line from Oswego to Syracuse, called the "Phœnix Branch."  This ran from the depot of the Rome, Watertown & Ogdensburg Railroad Company in West Oswego to the depot of the defendant in East Oswego; thence on the track of the defendant to Broadway station, in the village of Fulton; thence on the track of the Rome, Watertown & Ogdensburg Railroad Company to Syracuse.  The latter company had an agreement with the defendant by which it acquired the right to run its trains over the track of the defendant between Oswego and Fulton, subject, however, to the rules and regulations of the defendant.  On the morning of October 3, 1887, the Rome, Watertown & Ogdensburg Railroad Company sent out from Syracuse, for Oswego, a special train.  This left Syracuse at 9:40, and came to Broadway, Fulton, where it stopped to get orders from defendant to come to Oswego.  It then received from the defendant the following order: "To the Conductor and Enginemen of Extra Engine 20, Fulton, Broadway:  Run extra from Fulton, Broadway, to Oswego."  It then left Fulton for Oswego, and arrived in the yard of the

defendant in East Oswego about 10:45 or 10:50, and came into collision with the shifting engine of defendant, that was backing towards the coming train. The engineer of the shifting engine, when he saw the train approaching, reversed his engine, and gave it steam, and jumped off, as did also the fireman. As a result of that collision, the shifting engine went forward with increasing speed. The engineer or fireman could not overtake it, and it passed on through the yard of defendant, by the station, and on the track of the Rome, Watertown & Ogdensburg Railroad Co., across the river, and past the station of the latter company to near West Third street, where it collided with a shifting engine of the Rome, Watertown & Ogdensburg Railroad Company upon which Nary was fireman. In this collision, Nary received injuries from which he died. It is claimed on the part of the plaintiff that the defendant was negligent in sending this extra train from Fulton without notifying the shifting engine at the Oswego yard of its coming, and in the management of the shifting engine prior to and immediately after the collision. Judgment was entered on a verdict for plaintiff for $3,000, and defendant appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

P. W. Cullinan, for appellant. E. B. Powell, for respondent.

MERWIN, J. The direct cause of the injury in question was the engine of the defendant, set in forward motion by its employes, with the steam on, and then abandoned. Whether, under the circumstances, the employes of the defendant were negligent in so abandoning the engine, and whether the defendant, in failing to give notice to the managers of the shifting engine of the approach of the special train, failed to exercise reasonable care, and by such failure contributed to the result, were questions litigated at the trial, and upon which evidence was given on both sides. The verdict of the jury, finding, in effect, that the uncontrolled condition of the engine was the result of the negligence of defendant, is warranted by evidence. The defendant had a rule, called "No. 9," as follows: "Oswego yard extends from the depot south to the first overbridge. All trains will run slowly and carefully, and engineers will have their trains under control within the yard limits. Switching engines will be permitted to work within these limits without signals, except within ten minutes of the time of scheduled trains." Another rule, No. 143, was as follows: "A special order will be given, in the same words, to all persons or trains that are to act upon it, or are directly affected by it, so that each shall have a duplicate of what is given to the others." When the defendant issued the order for the special or extra train to run from Fulton to Oswego, it gave no notice to the manager of the shifting engine. The defendant is presumed to have known that, in the absence of notice, the shifting engine might, under rule 9, be moving without signals upon the track that the extra was coming on, as it was not within 10 minutes of any scheduled train. Whether the defendant sufficiently provided for this contingency, in view of the peculiar situation of its yard, was a question of fact, for the jury.

Upon the approach of the extra into the yard, the shifting engine was moving slowly backward towards the approaching train. Upon its being discovered, the engineer of the shifting engine reversed the movement, gave the engine steam, and abandoned it. The engineer of the extra testified that he was then running six to nine miles an hour, and had given divers signals of his approach. Whether the engineer of the shifting engine should have heard these signals, or was too hasty in abandoning his engine, and leaving it under steam, without control, were questions for the jury.

It is, however, claimed by defendant that it was incumbent on the plaintiff to show that the engineer of the extra train was not negligent, and that for failure to show this there should have been a nonsuit. This does not follow. Assume that the engineer of the extra was negligent, and that such negligence contributed to the result. That does not relieve the defendant from

the effect of its negligence.   *Kain* v. *Smith,* 80 N. Y. 458.   Nor is the question affected by the fact that the engineer of the extra and the deceased were both in the employ of the same company.   The rule of non-liability for the negligence of a fellow-servant applies only when the action is brought for an injury to a servant against the principal by whom such servant was himself employed.   *Smith* v. *Railroad Co.,* 19 N. Y. 132.

It is further claimed on the part of the defendant that the negligence charged against it was not the proximate cause of the injury.   This point was not specifically taken at the trial, (*O'Neill* v. *Railroad Co.,* 115 N. Y. 584;)[1] but it may, perhaps, be considered under the general grounds, taken on the motion for nonsuit, that there was no negligence on the part of the defendant, and that facts sufficient were not shown to constitute a cause of action.   The case of *Ryan* v. *Railroad Co.,* 35 N. Y. 210, is claimed to be in point as sustaining defendant's proposition.   There the railroad company, by the defective condition or negligent use of its engine, set fire to a quantity of wood in one of its sheds. The fire consumed the wood-shed, and spread to; and consumed the house of, the plaintiff, situated about 130 feet from the shed.   It was held that the plaintiff could not recover, as the damages were too remote.   The authority of this case has been considerably shaken by subsequent cases.   *Webb* v. *Railroad Co.,* 49 N. Y. 420; *Pollett* v. *Long,* 56 N. Y. 200.   It is, however, hardly applicable to this case; for here the injury was directly caused by the instrument itself, which was set in motion by the negligent act, as it is claimed, of the defendant.   The case of *Lowery* v. *Railway Co.,* 99 N. Y. 158, 1 N. E. Rep. 608, is more analogous to the present.   There a horse attached to a wagon was frightened by the falling of coals from defendant's engine, and ran away. The driver, in trying to control him, attempted to drive him against the curb-stone to arrest his progress.   The wagon passed over the curb-stone, threw the driver out, and the plaintiff, who was on the sidewalk, was run over and injured.   It was held that the negligent act of the defendant was the proximate cause of the injury, and that the injury was a natural and probable consequence of defendant's negligence.   It was said that "the company would clearly be liable for any direct injury arising from the falling of the burning coals upon the horse if it had been left to pursue its own course, uncontrolled by the driver; and there would seem to be no reason why it would not be equally liable when the driver seeks to control the horse, and exercises his best judgment in endeavoring to prevent injury."   In the present case, if the defendant is responsible for the starting of the engine uncontrolled, a collision and consequent injury would be the natural and probable result.   As was said in the *Lowery Case:* "There was no such intervening human agency as would authorize the conclusion that it was the cause of the accident, and therefore it cannot be said that the damages were too remote."

It is further claimed that the court erred in charging that "the jury must take into account the rules as they have been read to them on this question, as to whether or not, for the proper safety of the passengers by this train,— the persons on this train,—something more was necessary; that is, notice of anything else required to the managers of switch-engines in Oswego;" also, "that if that order [to run extra from Fulton] was not sufficiently definite, taken in connection with the rules which were in existence, then it was negligence on the part of the defendant."   The first clause quoted was not excepted to, the latter was.   It is claimed that the charge was erroneous within the principle of those cases that hold it to be improper to leave it to a jury to say whether due care required the presence of a flagman at a crossing.   *Weber* v. *Railroad Co.,* 58 N. Y. 451; *McGrath* v. *Railroad Co.,* 63 N. Y. 528; *Houghkirk* v. *President,* 92 N. Y. 219.   The present case is essentially different from those cases, and is quite similar to the case of *Sheehan* v. *Rail-*

[1] 22 N. E. Rep. 217.

*road Co.*, 91 N. Y. 332. In that case there was a collision between an irregular or "wildcat" train, No. 337, and a regular train, No. 50. An order was sent to 337 to "wildcat to Cayuga regardless of No. 50." No communication was sent to the conductor or engineer of 50, but word was sent to the operator at Cayuga to hold No. 50 for orders. The operator said to the conductor of 50: "Hold 50 for 61." No. 61 was a train coming in ahead of 337; and, upon the arrival of 61, 50 started out, and collided with 337. The court submitted to the jury the question whether "the defendant had omitted the doing of anything which it ought reasonably to have done to prevent the casualty." It was held no error; that, having ordered 337 to travel on the time of 50, defendant was bound to exercise every reasonable precaution that the latter should not leave Cayuga before the arrival of the former; and that its failure to communicate direct with the conductor and engineer of 50 presented a question for the jury. The *Sheehan Case* was followed in *Dana* v. *Railroad Co.*, 92 N. Y. 639, and in *Sutherland* v. *Railroad Co.*, 46 Hun, 372. Within the principle of these cases, the exception to the charge was not well taken.

The defendant called as a witness the assistant superintendent of the Utica Division of the Delaware, Lackawanna & Western Railroad Company, with a view of having him describe the situation of the Utica yard of that company, and showing that it had a rule similar to No. 9, and that it operated well, and that that rule was "a safe, proper, and sufficient rule to work upon." This evidence was objected to by the plaintiff, and excluded, and defendant excepted. In this there was no error. It was not a case for expert evidence on that subject. The cases cited by the defendant do not reach this case as presented at the trial.

There are in the case some other exceptions to rulings on evidence, but no point seems to be made about them. No error is disclosed. No question is made about contributory negligence. Judgment and order affirmed, with costs.

All concur.