HURL v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

**1. RAILWAYS—FELLOW SERVANTS—SEPARATE ROADS.**

Where defendant railway company was the lessee of the railroad on which plaintiff was employed as a brakeman, and plaintiff's train was permitted to run over the defendant's road, and while doing so was subject to the defendant's division superintendent, and the general officers of each road were the same, but each road was operated by different rules, had different superintendents and subordinate officers, different freight and transportation offices and accounts, and each road selected its own employés, plaintiff was not a fellow servant with an engineer on defendant's road.

**2. TRIAL—EVIDENCE—INSTRUCTIONS.**

Defendant's north-bound engine on its east track met a south-bound engine, which had crossed over to the east track in order to avoid an obstruction on the west track, and the north-bound engine stopped and ran backward to a point where defendant's road was joined by a road on which plaintiff was employed as a brakeman, and which had a right to run its trains over defendant's track. At this junction the north-bound engine backed into plaintiff's train, and injured plaintiff. Defendant's rules required that if, in case of obstruction, it became necessary to protect the front of the train, or if any other track was obstructed, the flagman should go forward with the danger signal. *Held*, that it was error for the court to submit the question to the jury whether it was negligence for defendant to permit the south-bound engine to run on the east track without giving warning of its approach, as there was no evidence to show that such engine belonged to defendant.

Appeal from trial term, Onondaga county.

Action by Albert Hurl against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

This action was brought by the plaintiff to recover damages for personal injuries sustained by him upon the 11th day of December, 1898, in consequence of a collision between a West Shore freight train, upon which he was employed as rear brakeman, and a locomotive belonging to the defendant, at a point near Sycamore street, in the city of Buffalo, where what is known as the "Buffalo Belt Line Railroad," which belonged to and was operated by the defendant, intersected the West Shore Railroad. The circumstances attending such collision were, briefly, these: A freight train belonging to the defendant, and drawn by engine No. 556, was proceeding southerly on the westerly of the two Belt Line tracks. At a point a short distance north of the place of the accident some of the cars of this train became derailed by reason of deep snow upon the track, and the conductor thereupon detached such of the cars at the forward end of the train as remained upon the track, and took them down to the defendant's freight yard, where he left them, and started to return to the wreck, upon the easterly track. Upon reaching a point about opposite Waldon avenue another engine was observed approaching engine No. 556, and about 80 rods distant. This engine was upon the same track, having crossed over from the westerly track in order to avoid the wrecked freight cars. Upon discovering this situation of affairs engine No. 556 was brought to a stop, and then proceeded slowly back in the direction from which it had just come, until it reached the point where the two railroads intersected each other by means of what is known as a "Y," when the West Shore train, on which the plaintiff was employed, came around the north arm of the Y, and collided with engine 556, with the result that the plaintiff, who was standing upon the top of the caboose at the rear end of the train, was thrown to the ground, and received the injuries of which he complains. It

appears that a switchman was stationed at the point Y to let West Shore trains on and off the Belt Line tracks, and when engine 556 had passed his shanty he signaled to the West Shore train, by means of a semaphore, that the way was clear for that train to come onto the easterly track of the Belt Line road; but when he discovered that engine 556 was coming back, and that it was too late to change the signal to the freight train, he seized a red flag, and made an ineffectual attempt to stop engine 556. He then turned the switch at the Y so as to let that engine onto the Belt Line track south of the Y, but this effort was also unavailing, and the collision immediately followed. The West Shore Y curved to the north at the point where it intersected the Belt Line, and on the inside of this curve were some buildings, which prevented the engineer of the freight train seeing engine 556 until just before the collision occurred, and it seems that neither engine 556 nor the engine coming south on the north-bound track had sent a flagman ahead of it, as required by one of the defendant's rules, when for any reason an unusual stop had become necessary. At the time of the accident the defendant was the lessee of the West Shore Railroad, and, while the general officers of both roads were the same, each road was operated under separate and distinct rules, and managed by different superintendents.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Leroy B. Williams, for appellant.
William S. Jenney, for respondent.

ADAMS, P. J. Upon the foregoing somewhat complicated state of facts, the learned trial court, after holding as matter of law that the plaintiff was not a co-employé of the defendant's servants, submitted three questions of fact to the jury, at the same time virtually instructing them that if they answered either one of them in the affirmative they might return a verdict in favor of the plaintiff, provided they also found that he was free from contributory negligence. These questions, although not reduced to writing, were substantially as follows, viz.: (1) Was the defendant negligent because of the failure of its employés on engine 556 to observe and heed the switchman's warning flag in time to have avoided the collision? (2) Did the omission of these same employés to send back a flagman, as required by defendant's rule 99, provided it was found that this rule was applicable to the circumstances of the case, constitute negligence on the part of the defendant? And (3) was the failure of the employés on the engine coming south to send forward a warning flagman, when that engine crossed over onto the east-bound track, in order to avoid the wreck, a negligent omission, which was in any sense a proximate cause of the accident?

As the verdict was a general one, it may be assumed, for the purposes of this review, that each of these questions was answered in the affirmative, and, such being the case, it becomes important to determine to what extent the verdict was warranted by the evidence in the case.

It is to be noted that each of these questions assumes the existence of certain facts, and it will probably not be denied that such an assumption was one which the trial court had a perfect right to indulge; for it appears without contradiction that O'Neill, the switchman, did wave a red flag as a signal of danger, in front of engine

556, which, had it been seen and heeded, would probably have had the effect to avert the accident, and it is equally well established that the employés on that engine, as well as the one going south, did not send forward a warning flagman, although the defendant's rule 99 required ·that, in case· of an accident or obstruction, "the flagman must immediately go back with danger signals to stop any train moving in the same direction, * * * [or] if the accident or obstruction occurs upon a single track, and it becomes necessary to protect the front of the train, or if any other track is obstructed, the fireman must go forward, and use the same precautions. If the fireman is unable to leave the engine, the front brakeman must be sent in his place." ·With these facts uncontroverted, it is by no means difficult to reach the conclusion that they establish actionable negligence upon the part of the defendant, provided the persons who failed of their duty did not bear the relation of co-servants to the plaintiff, and thus we are brought to the first question which is the subject of serious dispute.

As has already ·been stated, the defendant was the owner and in the absolute control of the Belt Line road, and it was also the lessee of the West Shore road, which latter road, by some arrangement existing between it and the defendant, had the right to run its freight trains on the Belt Line from Buffalo to Suspension Bridge; but it is conceded that from the time of entering upon the Belt Line its train crews, including engineers, firemen, conductors, and brakemen, were subject to the orders of the division superintendent in charge of the defendant's western division, and also subject to exclusion from the road by like authority. These employés were also controlled by the defendant's rules after entering upon the Belt Line, and in the operation of their trains thereon they were in no way subject to the orders of the West Shore superintendent or division superintendent. Upon the other hand, however, the superintendent, division superintendents, trainmasters, and all other officials, except the president and other general officers, and all their immediate subordinates, engaged in the operation of the West Shore road, were different individuals from the corresponding officials engaged in the operation of the defendant's road; the operating employés were employed and selected exclusively by the West Shore officials, who directed them in the manner of the performance of their duties, and exercised absolute control over their action while they were upon the West Shore road; and at the time the accident occurred the last-named ·road had a separate and ·distinct freight and transportation department, and all its rolling stock, including cars and engines, was designated by separate markings, and was used exclusively for the business of that road. It also had its own freight and passenger stations, kept separate and distinct books of account, and its business was conducted and its road operated under a system of rules different from those promulgated by the defendant. In these circumstances, we think the learned trial court was entirely correct in holding as matter of law that the plaintiff was not a co-servant of the defendant's switchman or of its employés in charge of engine 556.

It has long been the settled law in this country, as well as in England, that a master is not liable to his servant, for the negligence of a fellow servant, unless he himself has been negligent in the selection of his servant or in retaining him after notice of his incompetency; for such negligence is one of the risks assumed by a servant when he enters upon his employment. But, while the existence of this rule is now denied by no one, it is sometimes difficult to determine the exact scope and definition of the words "fellow servant." Generally speaking, it may be said to be one who serves and is under the control of the same master as another servant engaged in the same common pursuit. Shearm. & R. Neg. § 100; Wood, Mast. & S. (2d Ed.) § 435. Both of these elements must, however, exist; for if two men are engaged in a common pursuit under the management of different individuals, or in different pursuits under the control and management of the same individual, they are not co-servants. There must be unity of control as well as unity of occupation; and, applying this test to the present case, it fully demonstrates, as we believe, the correctness of the ruling of the trial court; for, while the plaintiff and the engineer and fireman of engine 556 were engaged in the same general occupation, they were not under the absolute control of the same master, even when upon the Belt Line road. The plaintiff was under the immediate direction of the defendant's division superintendent from the moment his train reached the Belt Line, it is true; but he still remained in the service of the West Shore Company, and the defendant's superintendent could not have discharged him therefrom had he refused to submit himself to the latter's direction.

In this connection another, and possibly a still more satisfactory, test suggests itself: Suppose the engineer of the plaintiff's train had been in the habit of running his engine in a negligent or reckless manner over the Belt Line road, or had in some other respect habitually so conducted himself while upon that road as to render him unsafe and unfit to manage his engine, and notice of this fact had been given to the defendant's division superintendent; can it be said that the plaintiff, upon this state of facts, would have any standing in court in an action against the West Shore Company for injuries resulting from the engineer's negligence, in the absence of similar notice to that company? But, without indulging further in illustrative discussion, it may be said, by way of conclusion, so far as the particular point under consideration is concerned, that, while the facts of this case are in some respects unlike those of any other to which our attention has been directed, the distinction is not so marked as to take the case out of the rule which has long obtained in this state; viz., that the employé of one railroad company, who, in the course of his employment, is obliged to run over the lines of another company, and while so engaged to subject himself to the orders of the latter company, is not thereby precluded from recovering damages from such latter company for injuries sustained in consequence of the negligent acts of its employés. Smith v. Railroad Co., 19 N. Y. 127, 75 Am. Dec. 305; Sullivan v. Railroad Co., 44 Hun, 304, affirmed in 112 N. Y. 643,

20 N. E. 569, 8 Am. St. Rep. 793; Tierney v. Railroad Co., 85 Hun, 146, 32 N. Y. Supp. 627.

Thus far in the consideration we have given to the case we have had in mind the first two propositions submitted to the jury by the trial court, but when we come to consider the third a different and more serious question presents itself. In his principal charge to the jury the learned trial justice stated that, instead of submitting any general questions of negligence, he should require answers to three specific questions, and, after stating the first and second in substantially the language hereinbefore mentioned, he added: "And, thirdly, was it [the defendant] negligent because its servants permitted engines to run southerly on this east track without giving warning of their approach?" To the portion of the charge just quoted an exception was duly taken by the defendant's counsel, who subsequently requested the court to charge "that if the sole act of negligence in this case which caused or contributed to the injury was the failure of train coming south upon the east-bound track to send a signal ahead of the train so as to prevent its coming into such close contact with engine 556, that the plaintiff cannot recover." This request was refused, and to such refusal another exception was also taken. These two exceptions, it is insisted, present reversible error, and therefore they demand our serious consideration.

In view of the conclusion which we have already reached as to the liability of the defendant for the negligent acts of its servants, no difficulty would arise respecting the third question submitted to the jury, did it rest upon the same basis as the other two; that is, did it appear that there was evidence in the case which would justify the finding that the engine referred to by the trial justice belonged to, and was under the control and management of, the defendant's servants. But unfortunately the case, so far as the record discloses, is wholly destitute of any such evidence. It simply appears that there was such an engine coming south upon the southbound track; that when it reached the point where the freight train was wrecked it crossed over onto the north-bound track, upon which it was apparently attempting to reach the defendant's yard, without any regard whatever to the requirements of rule 99; but whether this engine belonged to the defendant or to the West Shore Railroad we have no means of determining. It is claimed by the respondent's counsel that presumptively this was the defendant's engine, and that this presumption was indulged in throughout the trial. This, however, is denied by the appellant's counsel, and, inasmuch as the record fails to throw any light upon the subject, we do not see how the respondent's contention can be sustained; for, in view of the conceded fact that the West Shore trains and engines used the Belt Line road in common with the defendant, it will hardly do to presume that this particular engine belonged to either, in the absence of any proof whatever to support the presumption. Donnelly v. Jenkins, 58 How. Prac. 252; Kaiser v. Hirth, 46 How. Prac. 161; Harris v. Perry, 89 N. Y. 308; Denton v. Kernochan, 37 N. Y. St. Rep. 510, 13 N. Y. Supp. 889; Spencer v. McManus, 82 Hun, 318, 31 N. Y. Supp. 185; Moore v. Goedel, 34 N. Y. 526.

It is urged, however, that, even conceding the correctness of the appellant's contention respecting the failure of proof to sustain a finding based upon the affirmation of the third proposition submitted, his exceptions to the charge and to the refusal to charge are too general to raise any question upon this appeal. It is undoubtedly the rule that in order to obtain any benefit from an exception to language employed in a charge, or from a refusal to charge in accordance with the request of counsel, the attention of the court must be directed to the precise language objected to, or to the real proposition involved by the request, so that there may be no opportunity for misapprehension (McGinely v. Insurance· Co., 77 N. Y. 495); and it is but fair to trial justices that this rule should be pretty rigidly enforced, otherwise they would be at the mercy of adroit and designing counsel. In the present instance, while the exceptions relied upon may possibly have failed to fully inform the trial court as to their exact scope and meaning, we are unable to say that such is the fact, inasmuch as the record does not purport to contain all that passed between counsel and court when the exceptions were taken, but they certainly do present a serious question, which it is impossible for this court to ignore. We have suggested reasons why, in our opinion, the instructions given to the jury respecting the liability of the defendant for the negligence of the persons in charge of the engine in question were erroneous, and, if our conclusion upon that subject is correct, the request to charge necessarily presented that very question, and consequently a general exception to the court's refusal was sufficient. Schenck v. Andrews, 57 N. Y. 133. Such being the case, the error complained of is one which requires a new trial; for it is impossible to say that the verdict subsequently rendered was not in some measure, at least, founded upon an assumed fact, which was entirely unsupported by evidence. Having reached this· conclusion, the remaining questions raised by the defendant's counsel do not require our consideration.

Judgment and order reversed upon the law and the facts, and new trial ordered, with costs to the appellant to abide the event. All concur.