ALFRED W. BERRY *vs.* NEW YORK CENTRAL AND HUDSON
RIVER RAILROAD COMPANY & trustee.

Suffolk.    March 9, 1909. — May 21, 1909.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Negligence*, In railroad yard, Fellow servant.   *Railroad.   Agency.   Evidence,*
Relevancy, Competence.

Where a railroad company operates a switching yard jointly with another rail-
road company under a contract by whose terms the yard employees are em-
ployees of both companies, and all employees while in the yard are put under
the immediate supervision and control of one who is joint agent of both com-
panies, a baggageman, who is in the employ of one of the companies only and
who has no knowledge of the contract between the two companies nor any
notice or knowledge that he is under the direction or control of any one act-
ing either for the other company or for the two companies jointly, is not affected
by the provisions of the contract, and the joint employees of the two companies
are not his fellow servants in any such sense as to bar recovery on his part for
injuries resulting to him from their negligence.

At the trial of an action against a railroad company by one who, while in the em-
ploy of another railroad company as baggageman, lost his hand by its being
caught between two cars which he was attempting to couple in a switching yard
jointly operated by the two companies, there was evidence tending to show that
the plaintiff, who previously had been in the yard only six times, had been or-
dered in the early morning while it still was dark by the conductor of the train,
on which he was to work, to couple two cars to an engine, that at the time there
were other cars to be added to the train, that while he was obeying the order
some sleeping cars were backed down by a switching engine with unusual force
against the cars which the plaintiff was coupling, that no one was upon the for-
ward part of the sleeping cars as they proceeded and no means were taken to
warn the engineer of the switching engine that he should stop or "slow down"
because of the cars which the plaintiff was coupling; and there was no evidence
that it was the practice to give to the trainmen notice of the approach of cars
about to be coupled to a train.  *Held,* that the questions whether the plaintiff
was in the exercise of due care, whether he assumed the risk of the injury, and
whether his injury resulted from negligence of the members of the switching
crew, were for the jury.

At a trial of an action against a railroad company by a baggageman in the employ
of another railroad company for personal injuries alleged to have been caused
by reason of negligence of a switching crew in pushing cars with unusual force
against cars which the plaintiff was coupling in a railroad yard operated jointly
by the two companies, where it appears that the plaintiff was a comparative
stranger in the yard and where the negligence of the switching crew complained
of was the backing down of the cars without any means being adopted to tell the
engineer of the switching engine of the near approach to the cars where the plain-
tiff was working, it is proper to exclude a question, asked by the defendant of the
joint agent of the yard, "Under the practice there, what was the method whereby

the men were protected in the operation of their work, as to whether they looked out for themselves or otherwise," the defendant's counsel stating that he wished to show that, "in the specific way of doing work there," it devolved upon the plaintiff before going between cars for the purpose of coupling them to look and ascertain whether the shifting engine was at work at the other end of the train.

At the trial of an action against one of two railroad companies, which jointly operated a railroad yard, for injuries resulting to the plaintiff from a switching engine and cars being backed against cars which he was engaged in coupling, it is proper to ask the yardmaster of the yard what steps he took to ascertain whether or not any one of the crew of the train where the plaintiff was working was in a position of danger when the shifting engine was pushing the cars toward the cars where the plaintiff was working.

TORT for personal injuries received by the plaintiff on May 12, 1893, while in the employ of the Fitchburg Railroad Company at Rotterdam Junction, New York, through having his hand caught in a coupling by reason of alleged negligence of a switching crew alleged to have been employed by the defendant as lessee and operator of the West Shore Railroad. Writ in the Superior Court for the county of Suffolk dated July 22, 1893.

The case was tried before *Sherman,* J. There was evidence tending to show the following facts:

At the time of the accident the plaintiff had been a brakeman in the employ of the Fitchburg Railroad Company for three years. In the spring of 1893, he became a baggageman. Previous to the accident, he had been at Rotterdam Junction not more than six times and was not familiar with the conditions there nor with the manner of carrying on business at the yard there.

Between three and four o'clock in the morning of May 12, 1893, while it still was dark, the plaintiff, under orders from the conductor of the train upon which he was to work on its way to Boston, was assisting in coupling an engine to baggage and express cars. Other cars had not yet been attached. While he was so engaged, some sleeping cars, propelled by a switching engine and under the control of a switching crew, were pushed with a force which was unusual against the cars which the plaintiff was coupling and drove them ahead several feet although their brakes were set, and the plaintiff's hand was caught and severed from his arm.

Several witnesses testified that there was no one upon the forward end of the sleeping cars as they approached and that no

apparent means were taken to communicate to the engineer of
the switching engine when to stop because of the cars which he
was approaching.   At the time of the accident, the plaintiff did
not know that there was any agreement for joint operation and
control of the yard.

The evidence of the defendant tended to controvert that of the
plaintiff on nearly all of the material issues.

The deposition of one Benjamin was read by the plaintiff.
From the deposition it appeared that, at the time of the accident
to the plaintiff, the deponent was acting as yardmaster at the
Rotterdam Junction yard.   At the time of the taking of the dep-
osition, the defendant objected to the following interrogatory as
" incompetent, irrevelant and immaterial " and as " calling for
facts not shown to have been actually observed by the witness
and as calling for hearsay evidence."   When the deposition was
read to the jury, the objection by the defendant was renewed.
The answer was read subject to the defendant's exception.   The
question and answer were as follows :

" Q. What steps did you take to ascertain whether or not any
of the crew of the Fitchburg train was in a position of danger when
the shifter was pushing the sleepers toward said Fitchburg cars,
and what did you learn as a result of taking such steps ?   A. I
didn't take any steps to ascertain if any of the Fitchburg crew
were in danger.   The train was in the yard conductor's charge,
but he didn't take any such steps."

In the course of the direct examination of one Harriman, a
witness for the defendant, he testified that at the time of the ac-
cident to the plaintiff he was serving as agent for the joint yard
at Rotterdam Junction for the defendant and the Fitchburg
Railroad Company under the contract described in the opinion.
He was asked by the defendant's counsel " Under the practice
there, what was the method whereby the men were protected in
the operation of their work, as to whether they looked out for
themselves or otherwise ? "   The plaintiff objecting, the defend-
ant's counsel made the following offer of proof :  " What I want
to get at is whether in going in between the cars of the Fitch-
burg train there it devolved upon the man doing it to look out
for himself, to use his eyes and look out for other trains.   I wish
to show, in the specific way of doing work there, it devolves

upon him to look and ascertain whether the shifter is at work at the other end of the train." . The question was excluded, and the defendant excepted.

Other facts are stated in the opinion.

At the close of the evidence, the defendant asked the presiding judge to rule as follows:

1. " That on all the evidence the plaintiff could not recover.

2. " On the evidence, the plaintiff and the crew of the shifter were fellow servants, and the defendant is not liable to the plaintiff for the negligence, if any, of the said shifting crew.

3. " On the evidence, the jury would be justified in finding that the plaintiff assumed the risk incident to the position he took between the cars and the engine.

4. " The test of the question whether the plaintiff and the other men engaged in the same work of making up the train in the joint yard were fellow servants or not is whether they were all subject to the control, orders and directions of the same master for that time, at that place and in that undertaking."

The presiding judge refused to rule as requested, and in his charge to the jury stated, " I have ruled that that shifting crew are not fellow servants with the plaintiff, and that the plaintiff may recover, as against the shifting crew, for the carelessness of that shifting crew, it being admitted that they are the servants of the defendant jointly with somebody else, if they were negligent."

The jury found for the plaintiff; and the defendant alleged exceptions.

*A. R. Tisdale,* for the defendant.

*J. E. Hannigan,* (*I. Fox* with him,) for the plaintiff.

SHELDON, J.   The plaintiff, it is now settled by the verdict, received his injuries by reason of the negligence of the members of the shifting crew in the yard at Rotterdam Junction. These men were employed jointly by the defendant and the Fitchburg Railroad Company; and the first question raised by these exceptions is whether the judge should have ruled in accordance with. the defendant's request, that the plaintiff and the members of this crew were fellow servants, and so that the plaintiff cannot recover for an injury occasioned by their negligence.

The operation of this yard and station was provided for by two

written agreements between the respective predecessors of the defendant and the Fitchburg Railroad Company. Under these agreements, the operation of the yard and the right to the joint use of the main tracks were to be subordinate to the rules and regulations of the Fitchburg Company; a joint agent and joint employees were to be and were appointed by both companies, and were to be removed at the request of either company. All the employees in the yard were put under the immediate supervision and control of the joint agent, and any employee therein who should be unsatisfactory to either company was to be removed upon its request. Provision was made also for a division of the operating and other expenses of the yard, and it was stipulated that " Each party shall be liable for the damages resulting from the negligence of its own employees not in joint service while working in said yard, or on property jointly used under this contract, and each party will indemnify the other for any claim which it may be compelled to pay by suit or otherwise, arising out of any such case. Should any such damage result from the negligence of the joint employees in said yard, then the cost thereof shall be considered a part of the joint operation of said yard, and be borne jointly in the same proportion " as other operating expenses. The plaintiff's injury was caused by the negligence of joint employees in the yard; he was himself in the sole employment of the Fitchburg Railroad Company, and was not in the joint service of the two companies, unless by reason of the fact that while he was on the premises he was to be, under the agreement between the companies, " under the immediate supervision and control of the joint agent." The question accordingly is whether the plaintiff had become, and while in this yard and station was, the servant of the two companies jointly, and so a fellow servant with the employees by whose negligence he was injured.

There is no question that the general servant of any employer may be lent or hired, or in any way temporarily transferred by his master to another for some special service, so as to become, as to that service, the servant of such other person; and it is also true that the test by which a court will determine whether this has been done in any particular case ordinarily is whether the servant has become subject to the direction and control of

the party to whom his services have been temporarily transferred. It is enough to refer to a few of the cases which have affirmed this doctrine. *Munsie* v. *Springfield Breweries Co.* 200 Mass. 79. *Delory* v. *Blodgett,* 185 Mass. 126. *Samuelian* v. *American Tool & Machine Co.* 168 Mass. 12. *Coughlan* v. *Cambridge,* 166 Mass. 268. *Hasty* v. *Sears,* 157 Mass. 123. *Standard Oil Co.* v. *Anderson,* 212 U. S. 215. But in all these cases, and indeed in all the cases in which this rule has been applied, so far as we have observed, the servant has himself had notice and knowledge of the change of his employer, and has assented thereto, or else has had full notice and knowledge of the circumstances out of which the changed relation was held to have grown as matter of law, and so, by continuing service under the new conditions, has assented to the legal consequences which resulted therefrom. The exemption of a master from liability to a servant for an injury caused by the negligence of other servants in the same employment, like the liability of the master for those breaches of duty for which he may be held liable to his servants, is now commonly rested on the ground of agreement implied in the contract of service. *Heffernan* v. *Fall River Iron Works Co.* 197 Mass. 28. *Hasty* v. *Sears,* 157 Mass. 123, 125. *Kelly* v. *Johnson,* 128 Mass. 530, 531. *Johnson* v. *Boston,* 118 Mass. 114, 117. *Zeigler* v. *Danbury & Norwalk Railroad,* 52 Conn. 543, 555. *Dowd* v. *New York, Ontario & Western Railway,* 170 N. Y. 459. *Young* v. *New York Central Railroad,* 30 Barb. 229, 234. Blackburn, J., in *Howells* v. *Landore Siemens Steel Co.* L. R. 10 Q. B. 64. Brett, L. J., in *Swainson* v. *Northeastern Railway,* 3 Ex. D. 342. A servant who has made such a contract with one master cannot be held, against his will or without his consent expressed or implied, to have abrogated or suspended his contract and to have made instead a new contract with a third party. Accordingly, Lord Watson said in *Johnson* v. *Lindsay,* [1891] App. Cas. 371, 382: "I can well conceive that the general servant of A. might, by working towards a common end along with the servants of B. and submitting himself to the control and orders of B., become *pro hac vice* B.'s servant, in such a sense as not only to disable him from recovering from B. for injuries sustained through the fault of B.'s proper servants, but to exclude the liability of A. for injury occasioned by his fault, to B.'s own workmen. In

order to produce that result the circumstances must, in my opinion, be such as to show conclusively that the servant submitted himself to the control of another person than his proper master, and either expressly or impliedly consented to accept that other person as his master, for the purposes of the common employment." This language was quoted with approval and followed by this court in *Morgan* v. *Smith*, 159 Mass. 570, in which it was said also that the reasons for the rule of the exemption of a master *pro hac vice* from liability for the negligence of his other servants " have no application unless the servant knows that he ceases to be under the control of the master who employs him, and passes under the control of a new master." The same doctrine has been affirmed in other cases, some of which are cited in *Morgan* v. *Smith, ubi supra.* See also *Delaware, Lackawanna & Western Railroad* v. *Hardy*, 30 Vroom, 35 ; *Missouri, Kansas & Texas Railway* v. *Ferch*, 36 S. W. Rep. 487. But in the case at bar it was not claimed that the plaintiff had any knowledge of the contracts between the two companies, or any notice or knowledge that he was under the direction or control of any one acting either for the defendant or for the two companies jointly. His rights are not to be affected by the provisions of agreements between his employer and other parties not brought in any way to his attention. *Wagner* v. *Boston Elevated Railway*, 188 Mass. 437. *Robertson* v. *Boston & Albany Railroad*, 160 Mass. 191, 193. *Zeigler* v. *Danbury & Norwalk Railroad*, 52 Conn. 543, 555. *Philadelphia, Wilmington & Baltimore Railroad* v. *State*, 58 Md. 372.

It is of course not to be claimed that the employee of a single railroad company can be regarded as a fellow servant with those who are employed by that and another company acting jointly, just as the bookkeeper or stenographer of an individual is not a fellow servant with the employees of a firm of which his master is a member.

It may be added that there is a large number of decisions in other jurisdictions in which, under traffic arrangements between different carriers, more or less closely resembling the case at bar, it has been held that the defense of common employment, or the fellow servant doctrine, was not applicable. Some of these have been already referred to. Others are *Nary* v. *New York, Ontario*

*& Western Railway,* 125 N. Y. 759, affirming *S. C.* 9 N. Y. Supp. 153; *Murphy* v. *New York Central & Hudson River Railroad,* 118 N. Y. 527; *Sullivan* v. *Tioga Railroad,* 44 Hun, 304; *Hurl* v. *New York Central & Hudson River Railroad,* 73 N. Y. Supp. 1042; *Tierney* v. *Syracuse, Binghampton & New York Railroad,* 85 Hun, 146; *Sawyer* v. *Rutland & Burlington Railroad,* 27 Vt. 370; *Catawissa Railroad* v. *Armstrong,* 49 Penn. St. 186; *Vannatta* v. *Central Railroad,* 154 Penn. St. 262; *Phillips* v. *Chicago, Milwaukee & St. Paul Railway,* 64 Wis. 475; *Galveston, Harrisburg & San Antonio Railway* v. *Sweeney,* 6 Tex. Civ. App. 173; *Texas & Pacific Railway* v. *Easton,* 2 Tex. Civ. App. 378; *Bosworth* v. *Rogers,* 82 Fed. Rep. 975; *Baker* v. *Philadelphia & Reading Railway,* 149 Fed. Rep. 882; *Vose* v. *Lancashire & Yorkshire Railway,* 2 H. & N. 728.

Accordingly the defendant's requests for instructions upon this subject were properly refused; and as the defendant's exceptions were taken only to the refusal of its requests, we need not consider whether the judge went too far in ruling that as matter of law the plaintiff was not a fellow servant with the members of the shifting crew, or whether that question should have been submitted to the jury. *Dugan* v. *Blue Hill Street Railway,* 193 Mass. 431.

We think it manifest that upon the evidence it was for the jury to say whether the plaintiff, in acting as he did in obedience to the order of his conductor, was himself in the exercise of due care, whether or not he assumed the risk incident to the position which he took between the cars and the engine, and whether the accident was due to negligence of the members of the shifting crew. *Taylor* v. *Boston & Maine Railroad,* 188 Mass. 390. *Coughlan* v. *Cambridge,* 166 Mass. 268. *Murray* v. *Fitchburg Railroad,* 165 Mass. 448. *Caron* v. *Boston & Albany Railroad,* 164 Mass. 523. *Austin* v. *Fitchburg Railroad,* 172 Mass. 484. *Maguire* v. *Fitchburg Railroad,* 146 Mass. 379. *Loomis* v. *Lake Shore & Michigan Southern Railway,* 182 N. Y. 380.

The question put to Harriman by the defendant was properly excluded upon the offer of proof made. It was not disputed that the plaintiff was a comparative stranger at this yard, and there was no offer to show that any practice or method which had been adopted was known or had been communicated to him. He

did not complain and was not allowed to recover upon the ground of any danger ordinarily incident to the coupling of the cars and the making up of the train, but merely for the negligence of the defendant's men in backing down in the way they did. This is made plain by what the judge said to the jury in his charge : " There is no evidence that it was the practice to give previous notice to the trainmen . . . of the approach of cars about to couple on. The plaintiff's claim is that they ought not to back down there as they did, and that it was negligent for them to do so." That he did not assume that risk is shown by the cases already referred to.

The question put to Benjamin was plainly competent. He exercised some control of the crew of the shifting engine ; and negligence on his part as well as theirs was asserted by the plaintiff. There was no motion to strike out any part of what was said in the answer of the witness.

*Exceptions overruled.*