MARGARET A. McKINNON, administratrix, *vs.* WELLS BROTHERS COMPANY OF NEW YORK.

Suffolk.   November 11, 1913. — January 9, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Negligence,* Causing death.   *Agency.*   *Elevator.*

In an action under R. L. c. 171, § 2, as amended by St. 1907, c. 375, against a corporation which was the general contractor for the construction of a building, by the administrator of the estate of a workman employed by a subcontractor, for causing the death of the plaintiff's intestate by the alleged negligence of a servant of the defendant "while engaged in . . . its business," there was

---

evidence that, while the intestate was working on a staging that had been erected by his employer in an elevator well a number of stories above the freight elevator which was being used as a staging by the workmen of another subcontractor, a labor foreman of the defendant, who had been in its employ for a number of years, at the request of the foreman of the subcontractor using the elevator as a staging, attempted to raise the elevator, and in doing so caused the counter-weights, which were hanging above the intestate and the workmen with him on the defendant's staging, to descend and strike that staging, whereby the intestate was thrown down the elevator well, that the elevators of the building had been turned over to the defendant as the general contractor, were used by the defendant in its work and were operated by the defendant's engineers, that the defendant's foreman who caused the accident had been seen about the elevators at all times, sometimes actually running them, that he had given instructions as to their running and had discharged one of the engineers who operated them, and that when the subcontractor, at the request of whose foreman the defendant's foreman was operating the elevator at the time of the accident, wanted to use the elevator for carrying materials the defendant's foreman was the only man to go to for the necessary authority. The defendant's foreman was not called by the defendant as a witness. *Held,* that it was a question of fact for the jury, whether the defendant's foreman was acting as the servant of the defendant and within the scope of his employment in operating the elevator at the time of the accident.

TORT under R. L. c. 171, § 2, as amended by St. 1907, c. 375, by the administratrix of the estate of John McKinnon against the Wells Brothers Company of New York, a corporation, which was the general contractor for the construction of the Stearns Building at the corner of Tremont Street and Temple Place in Boston, for causing the death of the plaintiff's intestate by the negligence of a servant of the defendant while engaged in its business, the plaintiff's intestate being then in the employ of the New England Bolt and Steel Company, a subcontractor. Writ dated October 15, 1909.

In the Superior Court the case was tried before *Chase,* J. The evidence is described in the opinion. At the close of the evidence the defendant asked the judge to order a verdict for the defendant, which the judge refused to do. The defendant then asked the judge to make the following rulings:

"1. There is no evidence in this case connecting the defendant, Wells Brothers Company, with the accident.

"2. The evidence does not show that the defendant, Wells Brothers, was negligent with regard to any duty owed to the plaintiff.

"3. The evidence does not show that the plaintiff ['s intestate] was in the exercise of due care."

The judge refused to make any of these rulings, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $4,500.  The defendant alleged exceptions.

*C. F. Lovejoy,* for the defendant.

*M. J. Connolly,* (*J. A. Dorsey* with him,) for the plaintiff.

DE COURCY, J.   This is an action under R. L. c. 171, § 2, as amended by St. 1907, c. 375, for the death of the plaintiff's intestate, caused by a fall in an elevator shaft in the Stearns Building on Tremont Street, Boston.  At the time of the accident on August 11, 1909, the defendant was the general contractor in charge of the erection of the building, and had entered into several subcontracts for the performance of certain portions of the work connected with the construction.  The iron and steel work was being furnished and installed by the New England Bolt and Steel Company, the employer of the decedent, John McKinnon. The subcontract to furnish and set the tiling was with the C. M. Tyler Company; and the Otis Elevator Company had the contract to install the elevators in the building.

The freight elevators were in the rear of the building and had been used for the hoisting of material; but sometime before the accident this use had been discontinued, and the passenger elevators were used instead.  On the morning of the accident McKinnon and his co-employees had erected a staging in the freight elevator shaft at a point nearly opposite the eighth floor of the building, and were then performing work which their employer, the steel company, had contracted to do.  At this time the counterweights of the elevator were in the runway and above the workmen.  The elevator platform was being used as a staging near the first floor by employees of the Tyler Company, who were putting the lining of tile in the elevator shaft.  In pursuance of their work the tilers desired to have the elevator moved to a higher level; and this was done by one Flaherty, an employee of the defendant, without giving any warning to the men working above.  As the elevator ascended the counter-weights came down and struck the staging on which McKinnon was at work, with the result that he was thrown down the shaft and fatally injured.

There was ample evidence that the decedent was in the exercise of due care, and we do not understand that the defendant contends otherwise. It could be found that the staging on which he was at work was properly located and constructed, that no intimation was given to him that the elevator and counter-weights were to be moved, and that his foreman, John Andren, had received proper assurances that it was all right for him and his men to work there.

The jury were warranted in finding that the accident was caused by the negligence of Flaherty. He undertook to raise the elevator three or four feet at the request of one Carver, the foreman of the Tyler Company. The water supply that moved the elevator had been shut off by the foreman of the Otis Elevator Company, and Flaherty was unable to start the car until after he had gone to the pump room, and had tried the lever on the elevator without success. At this time two of the employees of the Otis Company were piping the elevator shaft for annunciators on the first floor, and one of them, Charles H. Carlson, on seeing Flaherty throw the lever back, told him not to touch it. All this time there was an unobstructed view of the staging on which the decedent was working, from the elevator platform. When Flaherty finally pulled the rope the elevator shot up, grazed Carlson on the arm, and went as far as the fourth story. The counter-weights, in descending a corresponding distance, struck the staging in their path, with the consequences already stated, and which readily might have been foreseen. The defendant did not call Flaherty as a witness to deny or explain this testimony; and it appeared that he was still in its employ and was present in court.

In order to hold the defendant liable under the statute it must further appear that in moving the elevator Flaherty "was engaged in . . . its business." It would serve no useful purpose to discuss in detail the conflicting testimony on this issue. Suffice it to say, it could be found that the defendant had control of the elevator and shaft before and on the day of the accident, and that the subcontractors, including McKinnon's employer, were working in and about the shaft with its permission on that day. When the Tyler Company employees wanted to have the elevator placed where they could stand on it in laying the

tiles, it was the defendant's general superintendent, Coburn, who asked foreman McDonald of the Otis Elevator Company to move it; and McDonald testified that Coburn had a right to ask him to do this.    There was evidence that the elevators had been turned over to the defendant, which was the general contractor, that it used the elevators for the purposes of its work after the building had reached a certain stage of completion, and that the defendant's engineers operated them.    Flaherty was labor foreman for the defendant and had been in its employ for a number of years.    It could be found that he had been seen around the elevators at all times, sometimes actually running them; that he had given instructions as to their running, and had discharged one of the engineers who operated them; that when employees of the Tyler Company wanted to use the elevator for carrying materials he, Flaherty, was the only man they had to go to for the necessary authority; and it was at the request of the foreman of the Tyler Company that Flaherty was operating the elevator at the time of the accident.    Here again it is to be noted that Flaherty was not called by the defendant as a witness to counteract this testimony or the inferences that legitimately might be drawn from it on the issue of his authority. It was a question of fact, to be determined by the jury on all the evidence, whether Flaherty was acting as the servant of the defendant and within the scope of his employment in operating the elevator at the time of the accident.    And we cannot say as matter of law that there was not evidence to warrant their verdict.    *D'Addio* v. *Hinckley Rendering Co.* 213 Mass. 465, 469. *Berry* v. *New York Central & Hudson River Railroad,* 202 Mass. 197.    *Shepard* v. *Jacobs,* 204 Mass. 110.    *Sprague* v. *General Electric Co.* 213 Mass. 375.

*Exceptions overruled.*